381 So.2d 504 (1980)
In the Interest of Joseph GENUSA a/k/a Joseph DeMarco.
No. 65987.
Supreme Court of Louisiana.
March 3, 1980.
Bradley N. Gater, Supervising Atty., New Orleans, Tulane Juvenile Law Clinic, Zoe Smith Wong, Student Practitioner.
Jerome A. Friedman, Metairie, for Dept. of Health and Human Resources.
James W. Blackman, Marreno, New Orleans Legal Assistance Corp., for parents of Joseph Genusa.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Melvin Zeno, Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-respondent.
Ann Clark Lazzara, Gretna, Richard L. Ducote, Gretna, amicus curiae for Jefferson Parish Foster Parent Assoc.
DIXON, Justice.[*]
Joseph Genusa was taken from his parents on October 5, 1979 by order of the Juvenile Court of the Parish of Jefferson. At that time Joseph was eighteen months old. The court ordered that he be placed in the custody of the office of Human Development of the Louisiana Department of Health and Human Resources, acting under R.S. 14:403 (relative to neglected children) and Code of Juvenile Procedure article 25 (relative to children in need of care). Both statutes provide for the appointment of counsel to represent a child taken from his parents. The court appointed Bradley N. *505 Gater, supervising attorney of the Tulane Juvenile Law Clinic,[1] to represent Joseph.
On October 16, 1979 the court held a hearing to determine continued custody. Before that hearing was held, representatives of the Tulane Law Clinic filed a motion to compel the disclosure of Joseph's location and the identity of the foster parents in whose care Joseph had been placed. The trial court denied the motion. At the hearing the court ordered that Joseph remain in the custody of the office of Human Development pending an adjudication hearing. The next day, October 17, the Fourth Circuit Court of Appeal denied an application for supervisory writs filed by the Tulane Law Clinic seeking to overturn the trial court's denial of the motion to compel disclosure of information as to the child's location and the identity of the foster parents. This court granted writs to review the action of the trial court and the Court of Appeal.
The question presented is whether an attorney appointed to represent a child who has been taken away from his parents is entitled to information as to the child's whereabouts and custodians while in the care of the Department of Health and Human Resources.
As noted above, both R.S. 14:403 and C.J.P. 95 provide for the appointment of counsel to represent the child. Neither statute delineates the responsibilities of an attorney so appointed. It is clear, however, that an attorney appointed to represent a minor child bears the same ethical and professional responsibilities toward his client as any other attorney representing a client in a criminal or civil case.
A lawyer's primary duty is to represent his client zealously, within the bounds of the law. EC 7-1. He may act as either an advocate or an adviser. EC 7-3. In so doing he must take care to exercise his professional judgment solely for the benefit of his client and free of compromising influences and loyalties. EC 5-1. As noted in EC 7-11, the lawyer's responsibility may vary upon the intelligence, experience, mental condition and age of his client. A particularly onerous burden is placed on an attorney when his client is incapable of making a considered judgment on his own behalf, as in the present case. If the child has no legal representative to whom the attorney may look in making decisions for the child, he may be forced to make them himself. In such a situation, "the lawyer should consider all the circumstances then prevailing and act with care to safeguard and advance the interests of his client." EC 7-12.
The above provisions make it clear, in cases such as Joseph's, that the attorney must develop facts as to "all circumstances then prevailing" and exercise his judgment accordingly. The policy that an attorney be fully conversant with the facts of a case in which he is involved is well embedded in our law. It is this policy which is behind the ethical rule of confidentiality between lawyer and client, and behind the evidentiary privilege that protects a client's confidences. EC 4-1. In elaborating on an attorney's duty in this area, EC 4-1 states, in part, that a "... lawyer should be fully informed of all the facts of the matter he is handling in order for his client to obtain the full advantage of our legal system. It is for the lawyer in the exercise of his independent professional judgment to separate the relevant and important from the irrelevant and unimportant." In situations such as the present case, it is the duty of the attorney representing the child, in the exercise of his professional judgment, to determine which avenues of investigation he wishes to pursue. It is not the province of the court or of the Department of Health and Human Resources, which may have interests *506 adverse to the child's, to engage in such decision making. We must presume that the reason that the legislature provided for the appointment of counsel in these cases was to insure that such decisions would be made by an attorney with only the interests of the child at heart.
In a proceeding such as the present case, the ultimate issue is whether a child should be taken away from his parents and given into other custody. In representing the child the attorney must constantly make decisions for which only he is responsible and for which he must be fully informed. It is part of the exercise of the attorney's professional judgment to determine upon what facts those decisions should be predicated.
The Department of Health and Human Resources argues that the anonymity of foster parents must be preserved in order to insure that foster homes will serve as secure refuges for children who are taken from their parents and to protect foster parents from the unwanted intrusions by natural parents. That argument is unpersuasive in light of the requirement that an attorney keep the confidences of his client inviolate. In this case, as in any other, the attorney should act only on the fullest knowledge of the facts, and, as in any other case, he must preserve, where necessary, the confidentiality of those facts.
Nor does this case present an issue of "discovery." If the attorney's client were old enough to converse with his counsel, no one would suggest that the attorney would have to file, on behalf of his client, a motion for discovery in order to find out his client's address. He could simply ask his client. The right of the attorney to know the whereabouts of his client go beyond the right of a party in an action to seek discovery from opposing parties. It is essential to the fundamental operation of his function as the person appointed to represent solely the child's best interests. He should not be prevented from performing that function merely because of the happenstance that his client is unable to communicate with him. In fact, as noted above, the attorney's duty is even higher in such situations than is normally the case.
We therefore hold that, in light of the determination by the legislature that such children as Joseph should be represented by counsel, it was error for the trial court to deny that counsel information pertaining to his client which the attorney, in the exercise of his professional judgment, considered to be material to the representation of his client.
For the reasons assigned, the juvenile court's denial of the motion to compel the disclosure of the identity and location of Joseph's actual custodians is reversed, and the case is remanded for further proceedings consistent with this opinion.
WATSON, J., dissents and assigns reasons.
WATSON, Justice, dissenting:
The majority opinion allows an attorney appointed to represent a child in juvenile proceedings to have unrestricted access to the location of the child and the identity of the foster parents in whose care he has been placed. Overlooked is the fact that there are a number of reasons why the State agency prefers to keep this information confidential, not the least of which is the difficulty of obtaining suitable foster parents. Having multiple lawyers poking and prying about the premises can hardly be thought conducive to the welfare of the foster children living there. The law places the responsibility for taking care of the children with the State. The responsibility for legal representation of the child is the appointed counsel's task. There should be a showing of good cause before counsel learns the name of the foster parents and the location of the child. There is no justification for a blanket rule that appointed counsel is entitled to such information without any showing.
Therefore, I respectfully dissent.
NOTES
[*] Chief Judge PAUL B. LANDRY, Retired, participated in this decision as an Associate Justice Ad Hoc.
[1] We assume that Mr. Gater was appointed personally to represent Joseph, in the absence of anything to the contrary in the record. C.J.P. 95 provides that Joseph is entitled to counsel in these proceedings. It is doubtful if the appointment of the Tulane Juvenile Law Clinic, instead of an individual attorney, satisfies that provision. See also Rule 20 of the rules of this court pertaining to the limited participation of law students in trial work through law school clinical programs.