417 So.2d 1356 (1982)
STATE of Louisiana in the Interest of Terry Joseph DRONET.
No. 82-23.
Court of Appeal of Louisiana, Third Circuit.
July 2, 1982.
Rehearing Denied August 30, 1982.
Baggett, McCall, Singleton & Ranier, Robert C. McCall, Lake Charles, and Kenneth E. Badon, Cameron, for defendant-appellant.
Jones, Jones & Alexander, Jerry G. Jones, Cameron, Raggio, Cappel, Chozen & Berniard, Stephen A. Berniard, Jr., Lake Charles, for plaintiff-appellee.
Before CULPEPPER, SWIFT and LABORDE, JJ.
CULPEPPER, Judge.
Mrs. Pamme Dronet Nobles has appealed from a judgment of the Thirty-eighth Judicial District Court, acting in its juvenile court capacity, declaring her 18-month old child, Terry Joseph Dronet, to be in need of care and giving custody of the child to the Department of Health and Human Resources (Department), for placement in a foster care program.
The record reflects that on September 28, 1981, the juvenile court issued an oral instanter order placing the child in the Department's custody. A verified complaint was filed on September 29, alleging that the child was in need of care within the meaning of LSA-C.J.P. article 13 for the *1357 reasons stated in the attached affidavit of Candace Faulk, a Department social worker. The affidavit set forth several instances in which the young mother left her home in Cameron, taking the child with her but failing to furnish him proper and necessary care.
On September 30, a hearing was held to determine the continued custody of the child pursuant to LSA-C.J.P. article 38. However, according to the judgment, "by stipulation and agreement of all parties present, the hearing to determine continued custody was converted to an adjudication and disposition hearing...." The mother was present at this hearing. Judgment was rendered in open court on September 30 and signed on October 28 finding Terry Dronet to be a neglected child in need of care and ordering that he remain in the home of his mother under the supervision of the Department. It further ordered that the child not be transported from the State without court approval.
On November 13, 1981, the district attorney filed another petition alleging that Pamme Nobles had violated the October 28 judgment by leaving her family home and taking up residence in Holly Beach, Louisiana, with a man not her husband. A hearing was had on November 19. The proceedings were recorded and have been transcribed for purposes of this appeal. The mother admitted she had moved to Holly Beach with the child, initially living for a short time in a motel with a man she had thought of marrying and subsequently moving in with a married couple. On November 19, judgment was rendered placing the child in the custody of the Department for eventual placement in a foster home. The judgment was signed on November 24, 1981. The mother timely appealed. The trial judge filed extensive written reasons on January 27, 1982.
The appellant's specifications of error are:
"1. The Court erred in proceeding without citation, service of process or any written or recorded oral waiver of the same.
"2. The Court erred in failing to provide counsel or obtaining a knowledgeable waiver of the right to counsel.
"3. The Court erred in adjudicating the child as a `Child in Need of Care,' without competent evidence to support the findings.
"4. The Court erred in adopting emergency procedures without any exceptional circumstances or dangers justifying these.
"5. The Court erred in finding that the mother's move from Cameron, Louisiana to Holly Beach, Louisiana was inconsistent with the safety and protection of the child.
"6. The Court erred in ordering the juvenile not be transported out of the State of Louisiana at any time without specific permission being granted by the Court, and then, upon request, refusing that permission."
We will consider the specifications of error in the order listed above.
SPECIFICATION OF ERROR NO. 1:
There is no merit in the appellant's contention that the proceedings were conducted without citation or service on her. Mrs. Nobles actually brought the citation and summons with a certified copy of the petition to the hearing on November 19, 1981. She testified under oath that she had received the papers on Monday before the hearing on the following Thursday.
SPECIFICATION OF ERROR NO. 2:
Under this specification, the appellant argues the court erred in failing to appoint special counsel for the child or to obtain a waiver of counsel as required by the following articles of the Code of Juvenile Procedure:
"Art. 95. Right to counsel
A. A child shall be entitled to counsel in the following proceedings:
(1) A hearing to determine continued custody;
(2) An appearance to answer a petition which requests that the child be adjudicated to be a delinquent;

*1358 (3) A transfer hearing pursuant to R.S. 13:1571.1 et seq.;
(4) An adjudication hearing if the petition requests that the child be adjudicated to be a delinquent;
(5) A disposition hearing if the child has been adjudicated to be a delinquent;
"(6) A hearing on a motion to modify the judgment of disposition in delinquency proceedings if the motion is filed by the district attorney or probation officer, unless the motion requests that the disposition be less restrictive;
(7) An appeal if the child has been adjudicated to be a delinquent.
B. The child shall be entitled to counsel in any other proceeding.
C. If the parents of the child are financially unable to afford counsel, the court shall appoint counsel in accordance with R.S. 15:141 et seq.
D. If the parents of the child are financially able to afford counsel but fail to employ counsel, the court may appoint counsel to represent the child at the expense of the parents in accordance with R.S. 15:148.
Added by Acts 1978, No. 172, § 1, eff. Jan. 1, 1979."
"Art. 96. Waiver of counsel
The child, with consent of the court and his parent, may waive assistance of counsel. Such waiver shall be evidenced by a writing signed by the child and his parent and filed in the record, or by a verbatim transcript of the proceedings in which the child is advised of his rights and, with consent of his parent,1 waives counsel.
Added by Acts 1978, No. 172, § 1, eff. Jan. 1, 1979."
The issue is whether in a proceedings to determine whether a child is in need of care, within the meaning of LSA-C.J.P. article 13(14), it is necessary in every case for the court to appoint special counsel to represent the sole interest of the child, in addition to the district attorney who represents the interest of the child. In State in Interest of Brown, 387 So.2d 1366 (La.App. 4th Cir. 1980), writ denied 394 So.2d 615 (La.1980) without giving reasons, the Court of Appeal held in a similar case that LSA-C.J.P. article 95 mandates the appointment of counsel to represent the sole interest of the child, in addition to the district attorney. With all due respect to our brethren of the Fourth Circuit, we disagree. Neither article 95 nor any other article of the Code of Juvenile Procedure requires such special counsel. It is our view that the counsel required by article 95 can be, and is in the present proceedings, the district attorney. To hold otherwise would mean that in every such proceeding there would be two attorneys representing the interest of the child. In most cases, as in the present, the interest of the child can be best protected by the district attorney alone.
LSA-R.S. 14:403 et seq., which is the child abuse statute in criminal law, can be considered in pari materia for the purpose of construing article 95 of the Code of Juvenile Procedure. LSA-R.S. 14:403G(9) provides that in child abuse charges brought against persons who abuse children, the district attorney "shall represent the interest of the state, which interest shall be the protection of the child." We note that the 1974 Act contained the additional provision that "The court may also appoint an attorney to represent the sole interest of the child." The 1979 amendment deleted this express provision allowing the juvenile judge, in his discretion, to appoint counsel for the child alone. We will not speculate as to whether the intention of the legislature in making this change was to prohibit or discourage appointment of additional counsel for the child. In any event, appointment of such additional counsel is not required in either the child abuse law or the Code of Juvenile Procedure.
Thus, it is our conclusion that in proceedings to determine whether a child is in need of care, the district attorney represents the interest of the state, which interest is the protection of the child, and this satisfies the requirement of article 95 that the child shall be entitled to counsel. Article 95 does not mandate that in addition to the district attorney another special counsel shall be *1359 appointed to represent the sole interest of the child.
In State in Interest of Brown, the Court of Appeal cites In Interest of Genusa, 381 So.2d 504 (La.1980) as authority for requiring the appointment of special counsel to represent the sole interest of the child. In that case, an 18-month-old child was found to be in a state of neglect and removed instanter from the parents and placed in the custody of the Department. A hearing was scheduled to determine continued custody. The juvenile judge appointed special counsel to represent the sole interest of the child at the hearing. This special counsel filed a motion to compel the disclosure before the hearing of the child's location and the identity of the foster parents. The trial court denied the motion, and the Court of Appeal denied writs. The Supreme Court granted writs and reversed, holding that an attorney appointed to represent a child at a continued custody hearing was entitled to information as to the child's whereabouts and custodians so that he could prepare for the hearing. The Genusa case is not authority for a rule that in every proceedings to determine whether a child is in need of care it is mandatory under C.J.P. article 95 that special counsel, in addition to the district attorney, be appointed to represent the interest of the child. The case did not involve that issue.
The appellant cites In Interest of Howard, 382 So.2d 194 (La.App. 2d Cir. 1980). In that case, the parents of a 14-year-old daughter were charged with abuse and neglect under LSA-R.S. 14:403, a criminal law. At the hearing, the parents advised the court they could not afford to employ counsel and requested the court to appoint an attorney to represent them. The trial judge refused, on the basis that this particular law did not provide for appointment of counsel. The Court of Appeal reversed on the grounds that since this was criminal law for violation of which the parents could be fined or imprisoned, they were constitutionally entitled to appointment of counsel. The Howard case is distinguished from the present matter in that here the proceedings is brought under the Code of Juvenile Procedure to determine whether the child is in need of care. There are no provisions in the statute under which these proceedings were filed for the imposition of penalties of any kind against the parent. Hence, the parent is not constitutionally entitled to appointment of counsel. Of course, the C.J.P. does not require appointment of counsel to represent the parent. Moreover, the parent in the present case made no request for appointment of counsel to represent her. It was not until after the child was removed from her custody and placed in foster care that she employed counsel to prosecute this appeal.
SPECIFICATIONS OF ERROR NOS. 3, 4, 5 and 6:
Specifications of Errors Nos. 3, 4, 5 and 6 address themselves essentially to the merits of whether the juvenile judge erred in finding the child was in need of care. The record before us contains ample evidence to support the finding by the juvenile judge that this child was in dire need of care. The trial judge gave five pages of written reasons explaining in detail his adjudication. These proceedings were initiated when Mr. and Mrs. E. J. Dronet, parents of the mother of the child, reported to Mrs. Candace Faulk of the Office of Human Development, that Mrs. Nobles had disappeared with her infant child and her whereabouts were unknown. According to the original affidavits which precipitated these proceedings, this was a pattern of behavior by Pamme which had been repeated many times. The Dronets stated that Pamme had been extremely erratic since her adolescent years. The most disturbing thing she repeatedly did was to leave Cameron in the company of strange men older than herself. On one of these trips she became pregnant with the child in question, Terry Joseph Dronet.
Mr. and Mrs. Dronet tried several times to get help for Pamme. She was a patient at East Louisiana Hospital, a student at All Saints School in Vicksburg, and was placed under the care of a psychiatrist. Unfortunately, *1360 she received no benefit from these efforts.
Following the birth of the child, Pamme continued her pattern of behavior. She would leave, often hitchhiking and disappearing for periods of time and taking the infant with her. Even after her marriage to James Nobles, Pamme left with a truckdriver for a period of four weeks, and neither her husband nor her parents knew her whereabouts. She finally called from Oklahoma City and her parents and her husband sent her money to return home. On returning to Cameron, she met another stranger and she and the infant again disappeared for several days. On a subsequent occasion, when the child was about five months old, the child became very ill and Pamme brought the infant back to her parents in Cameron, where the infant was hospitalized and found to have a bacterial infection causing severe dehydration.
On these occasions when Pamme took the child with her on hitchhiking trips, the child's health was endangered. On her return, the child was dirty and usually had bad diaper rash and was in poor health. All of this is described in the record and in the trial judge's written reasons. The trial judge explains why he finally had to remove the child from Pamme's custody and place him in foster care:
"The hearing of November 19, 1981 was provoked by the Department when it learned that Mrs. Nobles had again left the family home and was living in sub-standard conditions at a camp in Holly Beach, Louisiana with a young man by the name of Darrell Goodwin. At that hearing, the court confronted Mrs. Nobles with the allegations of the Department. Mrs. Nobles admitted that she had left her husband's home and was living in Holly Beach. She related that her leaving was part of a plan to divorce her husband and marry Mr. Goodwin. However, at the time of the hearing, as evidenced by the transcript taken of the court's conversation with Mrs. Nobles, she stated that she had again changed her plans and she no longer planned to marry Mr. Goodwin, she had taken up residence with two other people at Holly Beach named Dana and Kenny Houston. The court deferred ruling at the time of the November 19, 1981 hearing.
"After meditation on the problem, it was the court's decision that the Department should consider a foster care program which would be phased in gradually and, also, be phased out gradually on a showing that Mrs. Nobles had developed the capability to provide for the safety and welfare of the child. This was the second judgment of the court.
"Pursuant to the plan, the case worker went to the Houston residence in Holly Beach on the Wednesday immediately following the hearing. That was November 25, 1981. The worker was informed by Mrs. Houston that Mrs. Nobles had again disappeared with the infant child letting no one know her whereabouts. After contacting her husband and Mr. and Mrs. Dronet and becoming alarmed that Mrs. Nobles had again placed herself and the infant in a dangerous situation, the worker sought and received from this court an order that the child be taken into custody whenever it could be located.
"As a part of the order for custody, the court, also, issued an oral order that the foster care program be accelerated in view of the immediate danger posed by allowing Mrs. Nobles to maintain even partial custody of the child. Upon the basis of that modification, the Department obtained custody and placed the infant in foster care after Mrs. Nobles appeared and surrendered the child."
We conclude there is no merit in Specifications of Error Nos. 3, 4, 5 and 6.

DECREE
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the appellant.
AFFIRMED.
LABORDE, J., dissents. Article 95 of the Louisiana Code of Juvenile Procedure clearly mandates that the child be represented *1361 by counsel. See State In Interest of Brown, 387 So.2d 1366 (La.App. 4 Cir. 1980), writ denied, 394 So.2d 615 (La.1980).