527 So.2d 579 (1988)
In re STATE of Louisiana, In the Interest of Erick Wayne TOWNZEN.
No. 87-392.
Court of Appeal of Louisiana, Third Circuit.
June 22, 1988.
*580 J. Wade Smith, Lake Charles, for curator/appellant.
Patricia and Clifford Dennis, Lake Charles, in pro. per.
Richard Ieyoub, Ronald Rossito, Lake Charles, for State Dist. Atty., appellee.
Raggio, Cappel, Steve Berniard, Lake Charles, for State (DHHR) appellee.
Ronnie Ware, Charlotte Bushnell, Lake Charles, for curators/juvenile.
Before GUIDRY, FORET and LABORDE, JJ.
FORET, Judge.
The State of Louisiana filed a petition against Patricia Townzen Dennis, seeking to terminate her parental rights relative to the minor child, Erick Wayne Townzen. Trial of this matter was held on November 19, 1986 and, at the conclusion thereof, the trial court rendered judgment terminating all parental rights of Patricia Townzen Dennis (appellant), and she appeals this judgment.
On January 11, 1982, the State of Louisiana filed a petition in the Calcasieu Parish Juvenile Court, alleging that the minor child, Erick Townzen, was a neglected child in need of care as defined by La.R.S. 13:1600. Thereafter, on January 22, 1982, judgment was rendered by the juvenile court finding Erick to be in need of care and a dispositional hearing was held on March 19, 1982. At the conclusion of the dispositional hearing, the trial court ordered that Erick be placed in the legal custody of the State of Louisiana, while the physical custody of said child was granted to John and Vickie Conner, pending further orders by the court. The court also ordered appellant to undergo counseling at the Family and Youth Counseling Agency, a private entity contracted by the State to provide counseling services in child abuse cases.
During the ensuing four years and eight months, Erick remained in foster care while appellant attended some thirty-four counseling sessions with one or more social workers at the Family and Youth Counseling Agency. Additionally, appellant and her son have been evaluated by two psychologists, Dr. Patricia Post and Dr. Lawrence S. Dilks, both of whom were retained by the State. Several dispositional hearings have been held since the original hearing of March 19, 1982 and, on each such occasion, the Court has ordered the minor child to remain under foster care and in the legal custody of the State of Louisiana.
The issue presented for our consideration on appeal is whether or not the State carried its burden of proof by satisfying the requirements of any of the subsections enumerated under La.R.S. 13:1601. For the reasons hereinafter assigned, we affirm the judgment of the trial court.
La.R.S. 13:1601 states that parental rights shall be terminated when the grounds set forth in the petition meet all of the conditions set forth in any of the subsections enumerated thereunder. Therefore, while it is not necessary to satisfy the requirements of each subsection, all of the requirements set forth under any given subsection must be proven by the State before parental rights will be terminated. State in the Interest of C. V. v. T. V., 499 So.2d 159 (La.App. 2 Cir.1986), writ denied, 500 So.2d 411 (La.1986). In reaching its judgment, the trial court found that the State had proven all of the elements of R.S. *581 13:1601 subsections B, C, D, and F. Having found that all of the elements of Subsection F are met by the facts of this case, we need not discuss the other subsections relied upon by the trial court. Subsection F of La.R.S. 13:1601 provides as follows:
"§ 1601. Petitioning for the termination of parental rights
The court on its own motion may order that the district attorney petition, or the district attorney in his discretion may petition, for the termination of parental rights of the parent or parents of an abused, neglected, or other child within a juvenile court's jurisdiction, when the grounds set forth in the petition meet all the conditions of Subsections A, B, C, D, E, or F, of this Section. The district attorney may appoint any attorney representing the Department of Health and Human Resources as a special assistant district attorney for the purpose of prosecuting any such case, regardless of the domicile of said special assistant.

* * * * * *
"F. (1) The child has been in the custody of the Department of Health and Human Resources for a period of at least one year pursuant to a court order.
(2) The child was removed from the custody of his parent because of the parent's mental illness, mental retardation, or substance abuse; and such condition was so profound that it rendered the parent incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm.
(3) The continued custody of the child was necessitated by the parent's failure or refusal to effect a suitable alternative placement of the child other than foster care.
(4) Every reasonable effort has been made under the circumstances to rehabilitate the parent and such efforts have failed.
(5) There is no reasonable expectation of the parent being rehabilitated.
(6) Expert testimony established that termination of parental rights and adoption are in the child's best interest."
R.S. 13:1603 states that the elements of Subsection F must be proven by clear and convincing evidence. A review of each element thereof convinces us that the trial court clearly did not err in finding that the State had met its burden of proof insofar as Subsection F is concerned.
THE CHILD HAS BEEN IN THE CUSTODY OF THE DEPARTMENT OF HEALTH AND HUMAN RESOURCES FOR AT LEAST ONE YEAR PURSUANT TO A COURT ORDER.
The record of all prior proceedings was introduced into evidence at trial. As noted earlier, Erick Townzen was adjudged in need of care by judgment of the Juvenile Court dated January 22, 1982, and has remained in the custody of the State of Louisiana (through the Department of Health & Human Resources) since that time.
THE CHILD WAS REMOVED FROM THE CUSTODY OF HIS PARENT BECAUSE OF THE PARENT'S MENTAL ILLNESS, MENTAL RETARDATION OR SUBSTANCE ABUSE; AND SUCH CONDITION WAS SO PROFOUND THAT IT RENDERED THE PARENT INCAPABLE OF EXERCISING PARENTAL RESPONSIBILITIES WITHOUT EXPOSING THE CHILD TO A SUBSTANTIAL RISK OF SERIOUS HARM.
There is substantial evidence in the record concerning appellant's psychological disorders. According to Dr. Dilks and Dr. Post, appellant suffers from a mixed personality disorder which includes passive/agressive, passive/dependent, and anti-social personality disorders. Both doctors are of the opinion that the problems render appellant incapable of properly caring for Erick who, according to Dr. Post, has inherited some of his mother's personality disorders and will be in need of counseling for an indefinite period of time in the future. Insofar as her parenting skills are concerned, Dr. Post categorically stated that appellant lacks the capacity to properly care for and discipline Erick and, in all probability, professional counseling will not improve her ability to do so in the future.
*582 Dr. Post further testified that a continued relationship between Erick and his mother would be "very destructive" and will greatly exacerbate his problems and that the limited visitation granted to appellant over the past several months has impaired his progress. Of particular importance, insofar as the requirement of this subsection is concerned, is the fact that these same personality disorders, and the conduct of appellant associated therewith, precipitated the January 22, 1982 order of the Juvenile Court declaring Erick Townzen to be in need of care. This is clearly evidenced by the petition initially filed by the State on January 11, 1982 as well as the minutes of the January 22, 1982 court hearing. Therefore, we find that the State has proven the requirements of this subsection by clear and convincing evidence.
THE CONTINUED CUSTODY OF THE CHILD WAS NECESSITATED BY THE PARENT'S FAILURE OR REFUSAL TO EFFECT A SUITABLE ALTERNATIVE PLACEMENT OF THE CHILD OTHER THAN FOSTER CARE.
When questioned about alternative placement of her son, appellant stated that her mother, who lives in Natchez, Mississippi, and did not testify at trial, had advised appellant that she had called someone at the Office of Human Services and informed them that she would be willing to assume custody of Erick. Appellant further stated that in January of 1982, she advised Joanna Gatlin of the Office of Human Services that her sister, Ramona Townzen, was willing to assume custody of Erick. However, we do not find these unsupported statements to be persuasive, particularly in light of the failure of either party to appear and testify at trial. Furthermore, with regard to appellant's mother, it was established at trial that appellant was herself a foster child at one time and therefore we would be reluctant to allow appellant's mother to assume custody in this case when the record indicates that she failed to raise her own child. While the possibility does certainly exist that appellant's mother may have changed for the better, no such evidence was adduced at trial. Similarly, with regard to appellant's sister, Ramona, no evidence as to her character or the suitability of her home was presented at trial. Therefore, we have little difficulty in finding that the State has satisfied this requirement in that appellant has failed to demonstrate that there exists suitable alternative placement of the child other than foster care.
EVERY REASONABLE EFFORT HAS BEEN MADE UNDER THE CIRCUMSTANCES TO REHABILITATE THE PARENT AND SUCH EFFORTS HAVE FAILED.
Appellant has attended thirty-four counseling sessions with Michael McManus, a social worker with the Family & Youth Counseling Agency. Some of these sessions were also attended by appellant's present husband, Clifford Dennis. According to McManus, the purpose of these sessions was to develop parenting skills and improve appellant's overall family life. McManus states that appellant has shown little, if any, improvement during the course of these counseling sessions, and he sees no real motivation by appellant to change. He is therefore of the opinion that it is extremely unlikely that appellant will change for the better in the future. Additionally, as has already been noted, appellant was also evaluated by Dr. Post and Dr. Dilks, both of whom feel that, in light of appellant's psychological disorders, it is extremely unlikely that appellant will ever have the ability to properly care for and discipline Erick. We find that the counseling sessions arranged by the State, together with the psychological evaluations conducted by Dr. Post and Dr. Dilks, constitute a genuine attempt on the part of the State to rehabilitate appellant and we further find that such efforts have failed.
THERE IS NO REASONABLE EXPECTATION OF THE PARENT BEING REHABILITATED.
As noted in reference to the preceding subsection, Dr. Dilks and Dr. Post both feel that appellant lacks the capacity to care for the minor child, Erick, both now and in the future. In fact, Dr. Dilks testified that people with personality disorders such as *583 appellant's exhibit little, if any, improvement with counseling and therapy. In this regard, Dr. Dilks stated the following:
"A Could you explain that?
Q Well, you said her immaturity would limit her capacity for proper nuturing, care and all this other stuff.
A That one factor would limit it. I think, however, that is one factor that led to the conclusions and the diagnosis and the total impressions, and I think at this point, your statement has to be very carefully worded, and you said it limits it, and you're trying to say that she has some capacity, and I think in toto we have to say that the capacity does not exist at this time, and the probabilities are extremely in favor that it will not exist in the future.
Q She will never change?
A She will not change. When you get into the realm of personality diagnosis, you are looking at chronic long-term maladaptive patterns of living. That is the criteria for that whole chapter in the DSM, and these things are intertwined in the very personality structure of the individual. These people do not do well in counseling. If they're in sessions twenty or twenty-five or thirty sessions, you're not going to see much improvement, if any improvement at all."
The State has adequately proven that there is no reasonable expectation that appellant will be rehabilitated.
EXPERT TESTIMONY ESTABLISHED THAT TERMINATION OF PARENTAL RIGHTS AND ADOPTION ARE IN THE CHILD'S BEST INTEREST.
Considering appellant's history and the nature of her personality disorders, Dr. Post and Dr. Dilks both stated, unequivocally, that termination of parental rights was in the best interest of the child. According to Dr. Post, appellant is simply incapable of inhibiting her angry and hostile impulses and she feels that it would be "very destructive" for Erick to be re-united with his mother. She therefore recommends that Erick be placed for adoption in due course. Therefore, in view of the testimony of these experts, we find that the State has met its burden of proof in establishing that termination of parental rights and adoption are in the best interest of the minor child, Erick Townzen.

CONCLUSION
Termination of parental rights is a severe and terminal action and thus the State must satisfy an onerous burden of proof. State In Interest of C.P., 463 So.2d 899 (La.App. 2 Cir.1985). Considering the strong and unequivocal nature of the expert testimony presented at trial, we must, with heavy heart, affirm the trial court's finding that termination of parental rights is in the best interest of the minor child, Erick Townzen. Accordingly, for the reasons hereinabove assigned, the judgment of the trial court is affirmed, and all costs of this appeal are to be assessed to appellant, Patricia Townzen Dennis.
AFFIRMED.