540 So.2d 1244 (1989)
STATE of Louisiana in the Interest of JML.
No. 87-1287.
Court of Appeal of Louisiana, Third Circuit.
March 15, 1989.
*1245 George McGowin, Alexandria, for plaintiff/appellant.
Kieth Manuel, Marksville, Dan McKay, Bunkie, for defendant/appellee.
Before DOMENGEAUX, FORET and YELVERTON, JJ.
YELVERTON, Judge.
This appeal is from two judgments of the juvenile court handed down in the interest of the child JML. One judgment denied the state's petition to terminate the parental rights of the mother of the child. The other judgment denied the state's effort to have the child declared abandoned by the father. The state has appealed both judgments. We affirm both judgments for reasons which follow.

THE TERMINATION OF PARENTAL RIGHTS CASE
The trial judge found that although the mother is presently incapable by reason of mental illness of caring for the child, there is a reasonable prospect that she may improve to the point where in the future she can, and for that reason the petition for termination of parental custody was denied.
Termination of parental rights is the permanent elimination by court order of all parental rights and duties including residual parental rights. La.R.S. 13:1600(4). A petition to terminate parental rights must be brought by the district attorney, and must set forth one or more of the grounds described in La.R.S. 13:1601.
The proceeding in the present case was brought under the provisions of Subsection F of R.S. 13:1601. Subsection F deals with the situation in which the parent has a mental deficiency. To terminate parental rights based on this ground, the state is required to prove the ground by clear and convincing evidence. La.R.S. 13:1603 A.
Subsection F of La.R.S. 13:1601 requires the following elements of proof where the state is relying on mental deficiency as a ground:
"F. (1) The child has been in the custody of the Department of Health and Human Resources for a period of at least one year pursuant to a court order.
"(2) The child was removed from the custody of his parent because of the parent's mental illness, mental retardation, or substance abuse; and such condition was so profound that it rendered the parent incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm.
"(3) The continued custody of the child was necessitated by the parent's failure or refusal to effect a suitable alternative placement of the child other than foster care.
"(4) Every reasonable effort has been made under the circumstances to rehabilitate the parent and such efforts have failed.
"(5) There is no reasonable expectation of the parent being rehabilitated.
"(6) Expert testimony established that termination of parental rights and adoption are in the child's best interest."
In the present case the trial court found, and the record establishes, that the child, born September 6, 1978, had been in the custody of the Department of Health and Human Resources pursuant to a court order since September 4, 1985, more than one year before the suit for termination was filed. The child had been adjudicated as a child in need of care.
The allegations on which the state rested its demand for termination of parental rights were contained in Article VII of the petition, reading:
"JPL has abandoned the said child, and the child's mother, JDL, has shown no significant substantial indication of reformation and is unlikely to reform for the following reasons:
"1. The said mother is emotionally and mentally disturbed, as well as possibly brain-damaged, thereby making it either impossible or highly unlikely for the said parent to parent and care for her young child in any manner whatsoever, all as shown by the examinations and *1246 reports of certified and licensed psychologists.
"2. The said mother has a history of out-patient as well as in-patient psychiatric treatment and is currently a resident of a nursing home in this parish inasmuch as she is unable to care for herself, and is equally if not more unable to care for a small child who himself has emotional problems.
"3. Over the past several years, the said parent of the said child has been offered numerous services by the Department, as well as numerous opportunities to demonstrate or improve her ability to adequately parent the said child. As of the date of the filing of this petition, the said parent has not adequately lived up to the agreements which she voluntarily undertook with the Department and/or Agency, and has not demonstrated any ability or willingness to reform or rehabilitate herself so as to allow her to adequately parent the said child.
"4. The best interests of the said child require that the parental rights of JDL be terminated so that the said child can be adopted by others."
After a hearing the trial court gave written reasons for judgment. In its reasons for judgment the trial court found that the mother had not abused the child nor had she refused to care for the child, but that her mental and emotional illness did in fact presently deprive her of the ability of caring for the child.
It was on the issue of whether there was any reasonable expectation of the mother being rehabilitated, or recovering from her mental illness, that the trial court found the state failed to meet its burden of proof. The trial court specifically held that the state had not proved that the mother was not going to recover, but that, in fact, the evidence showed that she might recover. In its reasons for judgment the trial court said:
"Those who live with her from day to day have testified that she is improving. There is no indication as to where this improvement will end. We do have the testimony of an expert which the court respects to the effect that here recovery is unlikely. She is poor and unable to employ an expert of her own. The court does not find that the state has proved that she will not recover, but rather believes that she may."
And,
"The mother is presently confined to a nursing home, although being only 43 years of age. She appeared in court and understood the proceedings. She strongly objected to the proceeding to deny her rights as a parent. The mother's problems and [sic] principally mental and the Court finds that she is mentally ill to the extent that she is unable to care for the child at this time. It is quite possible that she will never be able to do so. However, we find that the mother is not capable of neglect because neglect implies the failure to do something which a person is capable of doing. There is no doubt that she dearly loves her child and looks forward to the time when she can be restored to custody."
On this appeal the state raises three issues. The first is the contention that the trial court erred as a matter of law in holding that termination of parental rights may never be based on inability to care for a child caused by mental illness alone. Our reading of the record and the trial judge's reasons for judgment do not indicate that the trial court suffered under any such misapprehension. R.S. 13:1601(F) deals specifically with the situation in which a parent has a mental deficiency, and termination of parental rights based upon this provision of the statute has been upheld. State in Interest of Townzen, 527 So.2d 579 (La.App. 3rd Cir.1988); State in Interest of C.V. v. T.V., 499 So.2d 159 (La.App. 2d Cir.1986), writ den. 500 So.2d 411 (La. 1986); State in Interest of L.A.V., 516 So.2d 1315 (La.App. 2d Cir.1987). While we recognize that during the trial the trial court expressed some misgivings as to the wisdom of such a law, it is clearly apparent from his reasons for judgment that the decision in the case was based upon his findings of fact, and his appreciation of the *1247 law, and not upon his personal opinion as to what the law should be. This assignment of error has no merit.
The second assignment of error is that the trial court erred in finding the mother capable of being rehabilitated from her mental problems, and in failing to consider the other requirements of this statutory basis for termination of parental rights, including the best interests of the child. We find no merit to this argument either. The trial court heard both professional and lay testimony concerning the mother's mental condition and the prospects for her improvement, even the possibility that she might get well. The trial court concluded that it was not unreasonable to believe that she could be rehabilitated within the immediate future. The testimony of the psychiatrist suggested the unlikelihood of improvement, but there was substantial lay testimony which indicated that there had been improvement, and these witnesses optimistically believed there would be more. The statutory standard of the burden of proof is clear and convincing. Termination of parental rights is a severe and terminal action and thus the state must satisfy an onerous burden of proof. State in the Interest of Townzen, supra. We are unable to say that the trial court erred in its finding that the state had failed to meet its heavy burden of proof in this case.
The state also complains on appeal that the trial judge failed to take into consideration the other elements of the statute, including the best interests of the child. We disagree. The fact that the trial court did not make specific findings of fact with regard to each of the elements of R.S. 13:1601(F) does not mean that the court did not consider those elements. In any event, under R.S. 13:1603(A), it is provided that whenever the court finds that the allegations of Subsection F, (or any other subsection) of R.S. 13:1601, are proven true by the evidentiary standards set forth in the section, it may order termination of parental rights of the parent or parents against whom the allegations are proven. The section then provides that under Subsection F, paragraphs (1), (2), (3), (4), (5) and (6) must be proven by clear and convincing evidence. All of these requirements must be proven by the state before parental rights can be terminated. State in Interest of Townzen, supra. Therefore, the failure to prove any one of those elements, is a failure of the state to meet its burden of proof, and termination of parental rights cannot be ordered. The trial court in the present case found that the state had failed to prove there was no reasonable expectation of being rehabilitated, which is element (5) of the subsection. That finding of fact, as to which we here find no clear error, is sufficient to defeat the petition of the state for termination of parental rights.
Finally, the state complains that it was error for the trial court to conduct the termination hearing without an attorney present to represent the interests of the minor, JML. We need not answer this contention since the state cannot profit by any ruling we might make. There is a difference of opinion among the intermediate appellate courts of this state as to the necessity for the appointment of counsel under La.C.J.P. Article 95 when the interest of the child is espoused by the state itself. This circuit has taken the position that in abandonment proceedings and in proceedings to determine whether a child is in need of care the child's interests are properly represented by the district attorney, and the appointment of council under C.J.P. Article 95 is not required. State of Louisiana in the Interest of Terry Joseph Dronet, 417 So.2d 1356 (La.App. 3rd Cir. 1982). Other circuits, including the Fifth Circuit, have reached the opposite conclusion. See, e.g. State in Interest of Dillard, 450 So.2d 977 (La.App. 5th Cir.1984). If in the present case we ruled against the state on this issue, by authority of State in Interest of Dronet, supra, this would have no other effect than to require the vacating of the adjudication in its entirety, requiring the state to begin after the finality of this judgment with new proceedings. Since our present ruling affirming the trial court and rejecting the state's demand for termination of parental rights does not foreclose the right of the state to begin new proceedings, *1248 should circumstances warrant, at any time after this judgment becomes final, the situation so far as the state is concerned will not be changed by any ruling that we might make as to this issue, and we decline to make one.
We find no error in the trial court's denial of the state's petition to terminate the parental rights of JDL.

THE ABANDONMENT CASE
We turn next to a consideration of the judgment denying the state's petition for an abandonment as to the father, JPL. Proceedings to declare a child abandoned by a parent are provided for by R.S. 9:403, et seq., and are commenced by affidavit. The affidavit in this case was filed on July 14, 1987. It declares that the father last saw his son in 1979 or 1980. The affidavit declares that the father signed an agreement in March 1986 to contribute $34 monthly to help defray the cost of foster care for his son, the payments to begin on April 1, 1986, and that he had never made any payments. The affidavit recites that March 12, 1987, was the date of the last contact by the Department of Health and Human Resources with the father. On that date he called a foster care worker in response to a March 4, 1987, letter he received stressing the importance of his maintaining contact with his son through correspondence, telephone calls or visitation. That telephone call was the last contact the Department had with the father, according to the affidavit. Based on these detailed facts, the affidavit alleged that the child had been deserted by his father since March 12, 1987, a period of more than four months, that the father's whereabouts were unknown and that the father had failed to provide for care and support of the child for a period of more than four months under circumstances showing an intent to permanently avoid parental responsibility.
A hearing was set for August 21, 1987, and it was conducted on that date. The child was represented at the hearing by an attorney appointed for that purpose, and the father appeared in proper person. The proceedings began with the state presenting the testimony of a family services worker. She testified that the child had been in the state's custody since 1985. She said the last contact that the father had made was on March 12, 1987, which was a telephone call. The state tendered the witness at that point and the court allowed the father to ask questions. When the father's questioning contained lengthy preambles indicating his lack of knowledge of where his child was, and complaints that the state had failed to notify him of the whereabouts of the child, the trial court intervened and asked the father what it was he wanted the court to do in the case. When the father responded that he would like to get custody of his son, the court, after a further brief exchange stated:
"I'm going to tell you, I'm not going to give you custody. Since you have expressed an interest in custody, I'm not going to declare this as an abandoned child, which is what we're here for today. But you know how you can find out where that child is at any time through the Department of Health & Human Resources."
Moments later the judge added this language:
"Since you have expressed an interest, and you have come here today, I'm not going to declare him abandoned; he's still your child. Let's see now what you'll do."
The record ends at about this point.
The court thereupon signed a formal judgment dated October 2, 1987, stating that testimony having been taken, and after consideration and argument of counsel and the defendant, the law and evidence not being in favor of the state, the petition/affidavit of abandonment filed by the state was denied and dismissed.
On this appeal the state argues two general assignments of error. First, the state argues that it presented a prima facie case for abandonment under R.S. 9:403, and that the mere statement by the defendant that he would like to have custody of his child was not sufficient to rebut the presumption created by that prima facie *1249 case. The second assignment of error is that the trial judge abruptly terminated the hearing without giving the state an opportunity to put on the rest of its case, and without allowing the curator ad hoc appointed to represent the child to ask any questions of the witness. We will observe in response to the second assignment of error that the transcript shows that neither the state nor the curator ad hoc asked the court for permission to conduct further proceedings or ask any further questions, and, for all the record shows, these attorneys totally acquiesced in the decision of the court to terminate the hearing. Our response to the first assignment of error is that the state never put on a prima facie case in accordance with the strict requirements of the statute. R.S. 9:403 reads, in part:
"A. A child shall be considered abandoned when clear and convincing evidence is introduced at a judicial proceeding to prove either:
"(1)(a) the child has been deserted for a period of at least four months by his parent or parents, the whereabouts of his parent or parents are unknown, the parent or parents have made no provision for the child's care and support and have shown an intention to avoid parental responsibility; or
"(b) the parent or parents have failed to provide for the care and support of the child for a period of at least four months under circumstances showing an intention to permanently avoid parental responsibility.
"(2) The introduction of clear and convincing evidence which establishes the facts required by Subparagraphs (1)(a) or (1)(b) of this Subsection shall create a presumption that the parent or parents intended to permanently avoid parental responsibilities. The child shall be declared abandoned unless the parent or parents present evidence that rebuts the presumption. A parent adjudged to have abandoned his child under Subparagraphs (1)(a) or (1)(b) shall thereafter have no right to object to or oppose any proceeding to adopt that child."
The transcript of the hearing shows that Marsha Webb of the Office of Human Development was the only witness offered by the state. Her testimony was extremely brief. On direct she was asked only one question that had to do with the elements of the proof of an abandonment case, and that was, "When was the last time the father had had contact with his son or with the Department of Health and Human Resources." She answered that question by giving the date of March 12, 1987. She was asked no further questions to lay a foundation for the proof of the elements of abandonment required by R.S. 9:403 A (1)(a), (b), and (2). Since the statute requires the introduction of clear and convincing evidence to establish the facts required by subparagraphs (1)(a) or (1)(b) in order to create a presumption that the parent intended to permanently avoid parental responsibilities, and since no other evidence was offered in the case by the state, the presumption never came into existence and there was nothing for the father to rebut. Under the circumstances, we are compelled to conclude that the state simply failed to prove its case for abandonment in accordance with the clear requirements of R.S. 9:403.
For the foregoing reasons the judgments of the trial court are affirmed. No costs shall be assessed against the state. La.R. S. 13:4521.
AFFIRMED.