liSAUNDERS, Judge.
V.D. and B.D., the parents of the children who are the object of this proceeding, appeal from a judgment terminating their parental rights. We reverse because the State did not prove by clear and convincing evidence that there was no reasonable expectation of the parents’ reformation as required by Louisiana Children’s Code Article 1015(5).

FACTS

The children were removed from their home on an emergency basis on November 4, 1991, following a complaint that the father had allegedly threatened to kill himself and the children because he was depressed over the fact that his wife had moved out of the household.[1]
^Following an initial investigation by the Office of Community Services, the children were adjudicated as children in need of care pursuant to then Article 76 of the Code of Juvenile Procedure. They were committed to the custody of the State of Louisiana by judgment rendered November 15, 1991.
On November 27,1991, a family team conference was held at which a case plan was developed. The father attended this conference and agreed to work with the Department in order to have his children returned to him. Under the provisions of the case plan, the father was required to attend parenting classes, mental health counseling, Alcoholics Anonymous, and aftercare with Cypress Hospital. He was also required to submit to a psychological evaluation and to refrain from keeping guns in his house. A visitation schedule was implemented.
Although the mother was not living in the matrimonial domicile and was only peripherally involved in the case plan immediately following the children’s removal, she did maintain contact with the children through visits and telephone calls. In May of 1993, following the reconciliation of the parents, the case plan was modified to include goals for the mother which required that she submit to a psychological evaluation, attend parenting classes, and seek mental health counseling.
Family team conferences were held every six months and revisions to the case plan were made on an as needed basis. Review hearings were also held every six months with the court recommending each time that the children remain in foster care and that the agency continue to work with the parents toward reunification of the family.
On February 9, 1994, a Petition For Termination of Parental Rights was filed by the State of Louisiana. At the conclusion of the hearing, the trial judge stated that the State had met its burden in proving that it is'in the best interest of the children to terminate the parents’ parental rights and ordered that their rights be | ^terminated. There are no specific findings as to the likelihood of parents’ reformation.

ASSIGNMENTS OF ERROR

The parents of the children assign two errors on appeal:
(1) The State of Louisiana failed to prove by clear and convincing evidence that the parents showed no reasonable expectation of reformation.
(2) The State of Louisiana failed to meet all of the conditions under Article 1015(4) and 1015(5) of the Louisiana Children’s Code.
Because we find that the parents are correct in their first assignment of error which requires reversal, we need not address the second assignment of error.

LAW

The law governing the grounds for termination of parental rights is contained in Louisiana Children’s Code Article 1015. The *449 State of Louisiana specifically proceeded under Article 1015(5) which provides as follows:
The grounds set forth in the petition must meet all of the conditions of any one of the following Paragraphs:
* * ⅜ ⅜ ⅜ *
(5) Prior adjudication as a child in need of care and removal from the parental home
(a) One year has elapsed since a child was removed from the parent’s custody pursuant to a court order in a child in need of care proceeding and placed either in the custody of an agency or individual.
(b) The parent is now unfit to retain parental control, and there is no reasonable expectation of his reformation in the foreseeable future.
(c) The department has made every reasonable effort to reunite the child with his parents to no avail but now recommends that reunification would not be in the best interests of the child.
The rights of parents to the companionship, care, custody and management of their children is a fundamental liberty interest warranting great deference and ^protection under the law. Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). “The termination of parental rights is a severe and terminal action and to permit it the State must satisfy an onerous burden of proof.” State in Interest of L.L.Z. v. M.Y.S., 620 So.2d 1309 (La.1993), citing State in Interest of JML, 540 So.2d 1244 (La.App. 3d Cir.1989). Article 1035 of the Louisiana Children’s Code requires that the facts alleged be proven by clear and convincing evidence. The provision requires proof of a higher caliber, “clear and convincing proof,” because it is specifically designed to protect substantial substantive rights. State in Interest of Three Minor Children, 558 So.2d 1238 (La.App. 1st Cir.1990).

REFORMATION

There is no statutory definition, of reformation. However, in State in Interest of L.L.Z. v. M.Y.S., supra, the court stated that a reasonable expectation of reformation is found to exist if the parent has cooperated with state officials and has shown improvement, although all of the problems that exist have not been eliminated.
There is ample evidence in the record that the father has cooperated with the Office of Community Services and attempted to comply with the requirements of the case plan. Three psychological evaluations were performed on him. He provided verification of his attendance at AA through January of 1993, at which point there is evidence that he had a setback in his battle with alcoholism. However, at the hearing he characterized himself as a recovering alcoholic and testified that he had resumed attending AA and was no longer drinking. He also testified that he was storing his guns at a friend’s house. The case manager, Ms. Melancon, testified that the father attended most of the counseling sessions required of by the case plan, including meeting with the children’s counselor on several occasions on an individual basis and with his wife. He completed two six-week sessions of parenting classes. He attended every family team conference | sand review hearing in this case. He has consistently maintained that he loves his children and wants them returned to him.
There is less evidence in the record regarding the mother. However, Ms. Melan-con testified that the mother completed most of the objectives of the ease plan. The mother attended parenting classes, mental health counseling, and sessions with the children’s counselor. She submitted to a psychological evaluation. She attended some of the family team conferences and review hearings.
It is also apparent from the record that the original reasons for which the children were removed from the household no longer exist. Ms. Reed, the child protection worker, and Ms. Melancon testified that the children were removed because the mother’s whereabouts were unknown and the father, with whom the children were living, was allegedly suicidal and posed a threat to the safety of the children.
The State’s own witnesses testified that the father is no longer suicidal. The children’s counselor, Ms. Boagni, and Ms. Melan-con testified that they do not think the chil *450 dren are in danger with their father and that there have never been any allegations of physical abuse. Additionally, the marital difficulties that led to the father’s emotional breakdown on November 4, 1991, have improved dramatically. The father and mother have reconciled and the mother had been residing in the household for several months prior to the hearing.
Ms. Melancon testified that she believed that the parents benefitted from the services provided by the Office of Community Services. The most recent psychological evaluation of the father performed by Dr. Buxton in April of 1994 indicated that the circumstances had improved due to the father and mother’s reconciliation. Dr. Buxton noted that the father’s strong negative reaction to the breakup of the marriage was the original reason the State intervened. His report states that, if the parents could get along reasonably well for a substantial period |eof time, then it would be appropriate for the children to be returned to the home for a trial placement. It further indicates that he is unable to conclude that the parents would never be able to provide a minimally adequate environment for the rearing of their children.

CONCLUSION

The above facts demonstrate that the parents have cooperated with the Office of Community Services and have made some improvements in their personal lives, although all of their problems have not been resolved. Under State in Interest of L.L.Z. v. M.Y.S., supra, the State failed to prove by clear and convincing evidence that there is no reasonable expectation of the parents’ reformation and, therefore, the trial court erred in terminating the parental rights. However, the children clearly remain in need of care and we are not suggesting that the parents were fit to regain custody under the circumstances as they existed at the time of the hearing.

DECREE

For the above reasons, the judgment of the trial court terminating the parental rights of V.D. and B.D. is reversed. No costs shall be assessed against the State. La.R.S. 13:4521.
REVERSED.

. The allegation that he threatened his children is not substantiated by the record.