I JAMES F. McKAY, III, Judge.
The appellant, D.P.G., seeks a reversal of the trial court’s judgment terminating her parental right to the minor child D.A.G. Finding no manifest error in the discretion of the trial court we affirm its judgment.
D.A.G. was born June 25, 1997, and is the minor child of D.P.G. and the putative child of T.G.[1] On February 11, 1999, the St. Bernard Sheriffs Office received a report that a small child was playing in the street at 2207 Trio Street. The sheriffs arrived at the residence only to find the mother, D.P.G., asleep. There was no doorknob or handle on the residence to secure the door closed and there were foul odors in the house. The sheriffs arrested D.P.G. On September 16, 1999, she pled guilty to child desertion. At the time of her arrest she was on active probation on a conviction for attempted possession of cocaine. A referral was made to the State of Louisiana, Department of Social Services, Office of Community Services (OCS), although D.A.G. did not enter State custody at that time because a relative assumed the care of the child.
During the interim period, prior to D.P.G.’s pleading guilty to child desertion, another incident took place concerning the care of the D.A.G. On April, | ¡>3,1999, Deputy Richard Jackson of the St. Bernard Sheriffs Office responded to a trespassing complaint. When he arrived at the residence he found twenty-one month old D.A.G., alone on the living room floor. He also saw a male entering the back room of the house. He followed the male and found an elderly female unconscious and intoxicated on her bed with her clothing around her ankles. It was determined that the woman was D.A.G.’s grandmother and that D.P.G. had left the child in her custody despite knowing the grandmother’s history of substance abuse. That same day OCS was granted custody of the child. On April 4, 1999, D.P.G. was once again arrested for battery on a police officer and she also tested positive for cocaine. She remained in jail until September 16, 1999. During this period of incarceration D.A.G. was in foster care.
D.P.G. was given a case plan with the goal of family reunification, which consisted of a successful completion of a substance abuse treatment program, obtaining and maintaining employment, obtaining stable housing for herself and D.A.G., consistent visitation, payment of child support and the completion of parenting classes.
Upon her release from jail, D.P.G. moved in with a friend, Ms. Ramos, in Violet, Louisiana, for two months. She then moved in with another friend, Tammy Cummins, in Chalmette, Louisiana, for three to four months; she briefly moved back with Ms. Ramos. On March 2, 2000, D.P.G. was again • arrested for public *784 drunkenness, disturbing the peace and theft. Her probation was revoked and she remained in jail until November 20, 2000. By this time D.A.G. was now 3/é years old and had been in foster care for lié years. On April 17, 2000, the case plan was changed from a goal of family reunification to foster care with termination of parental rights thereby freeing the child for adoption.
|3On July 12, 2000, the State filed a petition to terminate parental rights pursuant to La. Ch.C. art. 1015(5), alleging that the child had been in state custody for a year. At the time of the trial D.P.G. was living with Ms. Cummings and sleeping on a lounger in her living room. She was unemployed, had not successfully completed a substance abuse program, and she had only paid three months of child support, $60.00. She did however complete a parenting program and had numerous visitations with her child including while she was incarcerated, as the OCS brought the child to her in jail. The matter was heard on December 7, 2000, and D.P.G.’s parental rights were terminated and D.A.G. was freed for adoption. The trial court in its reasons for judgment found that D.P.G. failed to substantially comply with the case plan and that there was no reasonable expectation of significant improvement in her condition or conduct in the near future. It also found that it was in the best interest of the child to terminate D.P.G’s parental rights.
The appellant avers that the trial court abused its discretion by concluding that the State proved, by clear and convincing evidence, a ground for termination of D.P.G’s parental rights pursuant to La. Ch.C. art. 1015(5).
Termination of parental rights is a severe and terminal action and to permit it the State must satisfy an onerous burden of proof. State in the Interest of L.L.Z. v. M.Y.S., 620 So.2d 1309, 1313 (La.1993); citing, State in the Interest of JML, 540 So.2d 1244 (La.App. 3 Cir.1989). In a termination of parental rights case, the State must prove all the elements by clear and convincing evidence. La. Ch.C. art. 1035. The evidence must allow the conclusion that termination is in the best interest of the child. State in the Interest of D.T. v. K.T., 29,796 (La.App. 2 Cir. 6/18/97); 697 So.2d 665, 668. More than simply protecting parental rights, our Ujudicial system is required to protect the children’s rights to thrive and survive. State in the Interest of S.M., 98-0922 (La.10/20/98); 719 So.2d 445, 452. Furthermore, while the interest of a parent is protected in a termination proceeding by enforcing the procedural rules enacted to insure that parental rights are not thoughtlessly severed, those interests must ultimately yield to the paramount best interest of the child. Id. In any case to involuntarily terminate parental rights, there are two private interests involved: those of the parents and those of the child. The parents have a natural, fundamental liberty interest to the continuing companionship, care, custody and management of their children warranting great deference and vigilant protection under the law, State ex rel J.A., 99-2905 (La.1/12/00), 752 So.2d 806; The State’s parens patriae power allows intervention in the parent-child relationship only under serious circumstances, such as where the State seeks the permanent severance of that relationship in an involuntary termination proceeding. The fundamental purpose of involuntary termination proceedings is to provide the greatest possible protection to a child whose parents are unwilling or unable to provide adequate care for his physical, emotional and mental health needs and adequate rearing by providing an expeditious judicial process for the ter *785 mination of all parental rights and responsibilities and to achieve permanency and stability for the child. The focus of an involuntary termination proceeding is not whether the parent should be deprived of custody, but whether it would be in the best interest of the' child for all legal relations with the parents to be terminated. State ex. reí J.A., supra; La. Child. Code art. 1001. As such, the primary concern of the courts and the State remains to secure the best interest for the child, including termination of parental rights if justifiable grounds exist and are proven. Nonetheless, courts must proceed with care and caution as the | (¡permanent termination of the legal relationship existing between natural parents and the child is one of the most drastic actions the State can take against its citizens. The potential loss to the parent is grievous, perhaps more so than the loss of personal freedom caused by incarceration. State ex rel. J.A., supra; State in the Interest of A.E., 448 So.2d at 185.
Title X of the Children’s Code governs the involuntary termination of parental rights. Louisiana Children’s Code art. 1015 provides the statutory grounds by which a court may involuntarily terminate the rights and privileges of parents. The State need only establish one ground, Louisiana Children’s Code art. 1015, but the judge must also find that the termination is in the best interest of the child. Louisiana Children’s Code art. 1039. State ex rel J.A., supra; State in Interest of M.L. & P.L., 95-0045 (La.9/5/95), 660 So.2d 880, 832. Additionally, the State must prove the elements of one of the enumerated grounds by clear and convincing evidence to sever the parental bond.
In the instant matter, the appellant argues that she substantially complied with the case plan pursuant to La. Ch.C. art. 1015(5) and that the State failed to establish all three elements set forth in this article by clear and convincing evidence.
La. Ch.C. art. 1015 provides in relevant part:
The grounds for termination of parental rights are:
(5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent’s custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent’s condition or conduct in the near future, considering the child’s age and his need for a safe, stable, and permanent home.
IflA court’s findings as to whether there has been substantial compliance with a case plan or a significant substantial indication of reformation has been shown and whether the parent is likely to reform will not be set aside absent manifest error. State in the Interest of B.J., 95-1915 (La.App. 1 Cir. 4/4/96), 672 So.2d 342, 351. La. Ch. C. Art. 1036 was amended effective August 15,1997 and now provides statutory guidance in determining whether a parent has complied with a case plan or whether the parent has shown reformation sufficient to preserve family reunification as a viable option to termination of parental rights. State Ex Rel. S.M., 99-0526 (La.App. 4 Cir. 4/28/99), 733 So.2d 159, 165.
Art. 1036: Proof of parental misconduct, provides in pertinent parts that:
C. Under Article 1015(5), lack of parental compliance with a case plan may be evidenced by one or more of the following:
*786 (1) The parent’s failure to attend court-approved scheduled visitations with the child.
(2) The parent’s failure to communicate with the child.
(3) The parent’s failure to keep the department apprised of the parent’s whereabouts and significant changes affecting the parent’s ability to comply with the case plan for services.
(4) The parent’s failure to contribute to the costs of the child’s foster care, if ordered to do so by the court when approving the case plan.
(5) The parent’s repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.
(6) The parent’s lack of substantial improvement in redressing the problems preventing reunification.
(7) The persistence of conditions that led to removal or similar potentially harmful conditions.
D. Under Article 1015(5), lack of any reasonable expectation of significant improvement in the parent’s conduct in the near future may be evidenced by one or more of the following:
|7(1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.
(2) A pattern of repeated incarceration of the parent that has rendered the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time.
(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.
D.P.G., argues that she has completed a substantial number of'her meetings with the Christian Intervention Program through her church and Alcoholics Anonymous, which she attended through the St. Bernard Parish Substance Abuse Clinic, and that she only missed meetings because of her incarceration. She also argues that she had completed and received a certificate from her parenting classes.
The two OCS workers who were assigned to monitor D.P.G.’s case plan were Bernice Lee and Deborah Johnson, both who testified that D.P.G. did not substantially comply with the terms of her case plan. As outlined in the trial court’s reasons for judgment these caseworkers testified that D.P.G. attended only nine of thirty-six sessions of a substance abuse program. Ms. Ramos, the director of the Christian Intervention Program, testified that D.P.G attended most of the classes but that she had missed her last day. She also testified that D.P.G came to her session late and intoxicated and that she never made up her missed sessions. Although, Ms. Johnson, the OCS case worker who replaced Ms. Lee, also testified that D.P.G. had on her own volition, contacted Grace House and made 1 Sarrangements to participate in a six-month residential substance abuse treatment program.
The court noted that D.P.G. failed to maintain stability in her place of residence and employment. Ms. Adams, D.P.G.’s probation officer, testified that over the course of Vk years, D.P.G had four different addresses. Furthermore, there is no evidence that D.P.G. has actively sought nor has she maintained any employment since D.A.G. was taken into custody in *787 April of 1999. In the last 22 months that the court reviewed D.P.G. has been incarcerated for over 12 of those months. The trial court also found that D.P.G. failed to consistently contribute to the child’s foster care. It is also clear from the record that the appellant has failed to significantly comport and comply with her case plan to redress the problems with family reunification.
The record substantiates that D.P.G has failed to sufficiently comply with the removal of the persistence of conditions that led to the State custody of D.A.G. in the first place. Under the circumstances presented here, we find no manifest error in the trial court’s determination that D.P.G. has failed to substantially comply with her case plan and that it is in the best interest of the child to terminate her parental rights.
Accordingly, for the aforementioned reasons we affirm the judgment of the trial court.
AFFIRMED.

. The trial court also terminated T.G.’s parental rights, which are not the subject of this appeal.