446 So.2d 1385 (1984)
STATE of Louisiana In the Interest of A MINOR.[1]
No. 83-944.
Court of Appeal of Louisiana, Third Circuit.
March 7, 1984.
Rehearing Denied April 3, 1984.
*1386 F. Clay Tillman, Jr., Leesville, for defendant-appellant-appellee.
Richard Lynn Ducote, New Orleans, for plaintiff-appellee-appellant.
James R. Mitchell, Leesville, for minor.
Before CUTRER, LABORDE and KNOLL, JJ.
CUTRER, Judge.
This is an appeal from a trial court judgment in a juvenile proceeding which terminated the parental rights of the appellant-mother as to her eight-year-old daughter. The State originally petitioned for termination of the parental rights of both the child's father and mother; however, prior to trial, the father voluntarily surrendered his rights under the provisions of LSA-R.S. 9:401-402. The mother appeals, alleging that the State failed to meet the proof requirements of the statute relative to the termination of parental rights.
The Louisiana Department of Health and Human Resources (Department), which had maintained custody of the minor from five years prior to trial and with whom custody presently rests, appeals that portion of the trial court judgment which casts it with the attorney's fees ($300.00) awarded to the attorney appointed by the court to represent the minor. We affirm the termination order, but we reverse the judgment assessing the Department with the attorney's fees.

FACTS
The child in question was born in Korea on July 10, 1975; her mother is Korean and her father is an American, who was stationed as a soldier in Korea. The family subsequently resided at an Army post in Louisiana. In September 1977, the local Welfare Department was informed that witnesses had seen the mother physically abuse her then-two-year-old daughter. According to one of those witnesses, the incident occurred at a restaurant and began when the mother, with her closed fist, struck the child forcefully on the arm. The child began crying and, shortly thereafter, the witness saw the child "go flying past the window, and land on the cement on the stomach."
The young girl was taken to the Army hospital for examination, where it was decided that her parents would be allowed to take the child home, but they were to receive family service counseling on a weekly basis. The examining physician opined that the problem consisted "of the mother not being able to handle some of the frustrations of living with a two-year-old child." *1387 In June 1978, the Department[2] received a report that the child (still two years of age) was seen with bruises, welt marks and scratches on her face.
The child was again taken to the Army hospital where a physical examination revealed the following: a bruise over the left cheek, multiple areas of scratches, a deeper abrasion over the left side of the back, multiple contusions and abrasions over the lower extremities, multiple linear scarring over the buttocks and small circular scars, resembling cigarette burns, on the torso and left eyebrow. The diagnosis of the examining physician was "Battered Child Syndrome." Pursuant to these findings, a judicial hearing was held and, on July 7, 1978, custody of the child was transferred to the Department.
The Department retained custody of the child during the five years prior to trial. The young girl spent most of that time in foster homes. Attempts were made by the Department to reunite the mother and daughter, but, because of the child's increasing emotional problems and the mother's failure to satisfactorily comply with the Department's plan for reunion, a petition was filed in April 1983, seeking to terminate the parental rights of both father and mother.
The degree of involvement between the father and the Department is not clearly revealed by the trial record, but he apparently was often in trouble, spending some time in jail. However, before the trial in September 1983, the father surrendered his parental rights in an act executed in Illinois, and this appeal, therefore, addresses the termination of only the mother's rights.

THE TERMINATION OF PARENTAL AUTHORITY
The State petitioned for the termination of the mother's rights under the authority of LSA-R.S. 13:1601(D), which sets forth the elements necessary for termination thusly:
"D. (1) The child has been in the custody of a child welfare department or other person, pursuant to a judicial order, for a period of at least one year.

(2) The child was removed from the custody of the parents by judicial order due to the parent's abuse or neglect of the child.
(3) The parent is unfit to retain parental control and there is no reasonable expectation of reformation on the part of the parent or parents.

(4) The child is an abused or neglected child, the Department of Health and Human Resources has made every reasonable effort under the circumstances to reunite the child with his parents, and the department recommends that it would not be in the best interest of the child to be reunited with his parents."
These elements "must be proven by clear and convincing evidence," [R.S. 13:1603(A)], and it must be proven "that the best interest of the child dictates termination of parental rights." R.S. 13:1602(D). The trial court held that the requisite burden of proof was met. We agree.
As we address each element we find that the Department has fully met its burden of proof.
(1) The child has been in the custody of a child welfare department or other person, pursuant to a judicial order, for a period of at least one year.
The record clearly reflects that a judicial order was rendered on July 7, 1978, placing the two-year-old child in the custody of the Department. Custody has continuously remained in the Department for over five years.
(2) The child was removed from the custody of the parents by judicial order due to the parent's abuse or neglect of the child.
The evidence is clear that the 1978 custody order resulted from the two occurrences *1388 in September 1977, and June 1978. At least one person saw the infant in 1977, when she was struck forcefully by her mother's fist and apparently thrown to the cement in anger outside a restaurant. At that time the only action taken by the Department included a physical examination of the child and counseling services for the mother and father. The examining physician in his report stated that the problems were caused by maternal deficiencies, which were to be treated.
In 1978, a doctor's examination revealed that the child had suffered bruises, scratches, abrasions, contusions, and scarring, some of which indicated the inflictions of cigarette burns. When the social worker examined the child, she had been left unattended in the guest house where she had been staying with her parents. When the mother returned and was confronted with her daughter's injuries, she said that she had struck the child with a brush.
The psychologist who examined both the mother and daughter between 1979 and 1982, testified that the child told others that her mother had burned her with cigarettes. The mother also admitted that she pulled her daughter's hair excessively and that she was sorry for that. The Army physician who examined the child prior to the 1978 custody hearing and transfer diagnosed her as being "battered."
The trial judge found as a matter of fact that the child's custody had been transferred due to physical abuse. We agree with that finding which is clearly supported by the record.
(3) The parent is unfit to retain parental control and there is no reasonable expectation of reformation on the part of the parent or parents.
An unfit parent is one "who has abused the child by inflicting physical or mental injury which causes severe deterioration to the child...." R.S. 13:1600(6). The evidence reflects that the mother is unfit.
After inflicting the initial physical abuse previously alluded to, the mother was referred to a counseling service and, less than one year later, the more serious physical abuse was detected. According to the mother, her daughter was a "bad, bad child" who would not mind her.
The psychologist who examined the mother testified that, although the mother wanted her child to live with her, she realized that this arrangement might not be best for her daughter. Further, it was noted that the mother placed too much responsibility on her child, which often resulted in inflictions of excessive punishment. Although the psychologist stated that the mother and child were "attached to each other," she noted that it was "very traumatic" for them to be involved with one another.
While the child was in the custody of the Department, the mother was allowed to visit her. After each of these visits the young girl would become very hyperactive, requiring the administration of drugs to control her activity.
Counsel for the mother argues that the trial judge erred in his finding that the mother had engaged in prostitution. We disagree. The evidence supports the lower court's finding. The Department concluded that the mother was earning income as a prostitute, but it did not believe that this would necessarily reflect upon the mother's ability to meet her child's needs. In one of the ninety-day agreement plans, wherein the Department was attempting to reunite the mother and child by scheduling regular visits upon the mother's agreement to fulfill certain obligations, the mother agreed "not to have men in the home for business purposes" while the child was present.
It was the opinion of the psychologist that the young girl had viewed adult sexual activity. She also observed that the young child, at an early age, had developed a distrust for men. Obviously the mother's chosen means of income and lifestyle has contributed to her daughter's developing emotional problems.
The mother requested that visits with her child be scheduled on any days other *1389 than military pay days. The Department complied with this wish and requested that the mother not entertain men at home while the child was present. At one time, visitation rights were stopped because the young girl was present during some of these episodes. Under these facts, the third element of proof was clearly met.
(4) The child is an abused or neglected child, the Department of Health and Human Resources has made reasonable efforts under the circumstances to reunite the child with his parents, and the Department recommends that it would not be in the best interest of the child to be reunited with his parents.
There is no question that the child was abused. Counsel for the mother primarily argues that the Department has not made every reasonable effort to reunite the mother and daughter. We find that the Department had made every reasonable effort to effectuate a reunion.
The child's custody was transferred to the Department when she was two years of age. By the time of trial the minor was eight. During that period she remained in the Department's custody, spending most of that time with foster parents. The Department entered into numerous visitation plan agreements with the mother, attempting to gradually return the child to her. Testimony from the involved social workers was that their only goal was to achieve the reunion of mother and child.
Various visitation schedules were made, and the mother usually made these visits. However, there was one period of time when the Department did not even know the mother's whereabouts. As the Department began scheduling more visits between the two, including overnight ones, in preparation for a permanent return, the mother would begin to balk and become uncooperative. The Department concluded that the mother wanted to visit but did not want the responsibility of caring for the child.
The trial judge concluded that the child should not be left in a "state of limbo." The Department was acting in the best interests of the child in seeking to terminate parental rights for, once done, the child will be available for adoption. LSA-R.S. 13:1605. The examining psychologist categorically believed the child's best interests would be served by severing her relations with her mother. Her opinion, in short, was the following:
"I think that it would be very destructive to [child's name] `s emotional adjustment to return to an environment that is unstable such as that provided by her mother."
This statement was consistent with the Department's position. The record fully supports the trial judge's termination of the parental rights.

ATTORNEY'S FEES
The Department appeals that portion of the trial court's judgment casting it with the payment of $300.00 attorney's fees for the attorney appointed to represent the minor. Under R.S. 13:1602(C), the trial court is required to appoint an attorney "to represent the sole interest of the child...." Title 13 is silent as to who shall pay the fees of the appointed attorney. Proceedings under Title 13 for the termination of parental rights are juvenile proceedings. As we turn to the Code of Juvenile Procedure we find a provision which also requires the appointment of counsel to represent a child in juvenile proceedings and makes provision for the payment of the fees. We shall apply this provision to these proceedings.
LSA-C.J.P. art. 95 provides as follows:
"A. A child shall be entitled to counsel in the following proceedings:

(1) A hearing to determine continued custody;
(2) An appearance to answer a petition which requests that the child be adjudicated to be a delinquent;
(3) A transfer hearing pursuant to R.S. 13:1571.1 et seq.;
(4) An adjudication hearing if the petition requests that the child be adjudicated to be a delinquent;

*1390 (5) A disposition hearing if the child has been adjudicated to be a delinquent;

(6) A hearing on a motion to modify the judgment of disposition in delinquency proceedings if the motion is filed by the district attorney or probation officer, unless the motion requests that the disposition be less restrictive;
(7) An appeal if the child has been adjudicated to be a delinquent.
B. The child shall be entitled to counsel in any other proceeding.
C. If the parents of the child are financially unable to afford counsel, the court shall appoint counsel in accordance with R.S. 15:141 et seq.

D. If the parents of the child are financially able to afford counsel but fail to employ counsel, the court may appoint counsel to represent the child at the expense of the parents...."
(Emphasis supplied)
Under the provisions of this procedural article, the Department is not responsible for the fees of the court appointed attorney who represents the child. Article 95 provides that, if the parents are unable to afford counsel, the court shall appoint one under the provisions of the indigent defender law. LSA-R.S. 15:144 et seq. If the parent is able to pay the fees of the appointed counsel, LSA-R.S. 15:148 authorizes the court to order the parent to reimburse the district indigent defender board according to the parent's ability to pay.
Having come to the conclusion that LSA-C.J.P. art. 95 is applicable, we shall reverse that portion of the trial court judgment which orders the Department to pay the $300.00 fee and order that the trial court proceed according to the provisions of art. 95 in establishing the payment of the fee.
For these reasons, that portion of the trial court judgment ordering the Department to pay the court appointed attorney's fees in the amount of $300.00 is reversed and set aside. The case is remanded to the trial court for the limited purpose of establishing the payment of the court appointed attorney's fees according to LSA-C.J.P. art. 95.
In all other respects, the judgment of the trial court is affirmed. The mother-appellant shall pay the costs of this appeal.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
NOTES
[1] At the request of the State, this case has been re-captioned to preserve the confidentiality of this matter. The mother's name is not set out herein for the same reason.
[2] At this time the Department existed under the name of the Office of Human Development.