465 So.2d 969 (1985)
FLUIDAIR PRODUCTS, INC., Plaintiff-Appellant,
v.
ROBELINE-MARTHAVILLE WATER SYSTEM, Defendant-Appellee.
No. 84-189.
Court of Appeal of Louisiana, Third Circuit.
March 6, 1985.
*971 Gahagan & Gahagan, Marvin F. Gahagan, Natchitoches, for plaintiff-appellant.
Brittain & Williams, Jack O. Brittain, Natchitoches, for defendant-appellee.
Before GUIDRY, FORET and STOKER, JJ.
STOKER, Judge.
This is an appeal in a suit on a construction contract. Fluidair Products, Inc., the contractor, sued the Robeline-Marthaville Water System for what it claimed to be the balance owed on the contract. The Robeline-Marthaville Water System reconvened for the damages it suffered as a result of Fluidair's alleged failure to complete the contract. Fluidair appeals from the trial court's judgment for the Water System.

FACTS
Fluidair and the Water System entered into a contract for the construction of a water plant on May 20, 1980. The project was financed by the Farmers Home Administration (FHA). The original date set for completion was March 27, 1981. The project was not finished by that date, and a forty-two day extension was granted Fluidair by the Water System. This extension moved the date for completion to May 8, 1981. The engineer for the Water System signed a Certificate of Substantial Completion on June 24, 1981. The Water System refused to pay Fluidair the 5% retainage held by the FHA. It contends that the plant was not complete and functioning properly at the time the engineer signed the Certificate of Substantial Completion. Fluidair argues that the plant was complete and ready to begin operating on May 12, 1981. The contract price was originally $153,846, and was revised to $173,126.68.
The trial court found that Fluidair failed in its contractual obligation to install the plant. It held the Water System was entitled to the retainage and to liquidated damages.
ISSUES
1. Was the Robeline-Marthaville Water System entitled to hold the retainage after the Certificate of Substantial Completion was signed?
2. Is Fluidair now entitled to the retainage?
3. What has the Water System proved it is owed?
4. Is the Water System entitled to liquidated damages, and if so, should they be allowed beyond the date of signing the Certificate of Substantial Completion?
5. Is the Water System entitled to attorney's fees?

RETAINAGE
The contract for the water plant provides that the owner will retain 10% of each progress payment until 50% of the work has been completed. It further provides:
"Upon substantial completion of the work, any amount retained may be paid to the CONTRACTOR. When the WORK has been substantially completed except for WORK which cannot be completed because of weather conditions, lack of materials or other reasons which in the judgment of the OWNER are valid reasons for noncompletion, the OWNER may make additional payments, retaining at all times an amount sufficient to cover *972 the estimated cost of the WORK still to be completed.
* * * * * *
"19.5 Upon completion and acceptance of the WORK, the ENGINEER shall issue a certificate attached to the final payment request that the WORK has been accepted under the conditions of the CONTRACT DOCUMENTS. The entire balance found to be due the CONTRACTOR, including the retained percentages, but except such sums as may be lawfully retained by the OWNER, shall be paid to the CONTRACTOR within thirty (30) days of completion and acceptance of the WORK."
Fluidair argues that the Water System was not entitled to hold the retainage after a clear lien certificate was issued on the project. It contends the purpose of the retainage is to protect the owner from liens against the project. We do not find this to be the case. The contract authorizes the owner to hold an amount sufficient to cover the cost of work still to be completed even after the work has been substantially completed. This indicates that one purpose of the retainage is to cover work that has not been completed. The contract states that the owner may pay the retainage to the contractor on substantial completion.
The contract states that the balance including the retainage, except such sums as may be lawfully retained, shall be paid within thirty days of completion and acceptance of the work. We find that the Water System never accepted the work. Norman McFerren signed the Owner's Certificate of Acceptance on June 26, 1981. He had been president of the Robeline-Marthaville Water System for a few days at that time but had not been authorized by its board of directors to sign such an acceptance. An officer of a corporation cannot act without authority of its board of directors or bylaws. LSA-R.S. 12:81. The office of president in itself confers no power to bind the corporation or control its property. Jeanerette Rice & Milling Co. v. Durocher, 123 La. 160, 48 So. 780 (1909). Since the plant was never accepted by the owner, it was not required to pay the balance due on the contract. There was sufficient evidence introduced to show that there were numerous items not completed by the contractor. Under the contract the owner was entitled to hold an amount sufficient to cover the work to be completed. The Water System was within its rights under the contract in holding the retainage.
The next issue is whether Fluidair is now entitled to the retainage.
When a contractor has substantially performed a building contract which he has breached, he is entitled in a suit on the contract to recover the contract price less whatever damages the owner may prove attributable to the breach. This contract was substantially performed since, as we explain later in this opinion, the cost of repairing and completing the plant is small as compared to the contract price. Since this was a contract to build under Article 2756 of the Civil Code, Fluidair is entitled to recover the entire contract price, including the retainage, less the damages proved by the owner.
Fluidair presented evidence that all that was owed it on the contract price was the retainage. There is some variance in the evidence as to the amount of retainage. We accept the trial court's finding that it is $7,466.33, as testified to by Charles Perkins of the FHA.
The copy of the partial payment estimate included by the Water System in its brief is not proof that Fluidair has been paid the entire contract price. In fact, page 2 of that document indicates that a retainage was held.
The next issue is what has the Water System proved it is owed.
Fluidair is liable to the Water System for damages it sustained from Fluidair's failure to do work it contracted to do, or failure to do it in the manner and at the time agreed. LSA-C.C. 2769. The contract also provides that the contractor warrants that the system is free from all defects due to faulty materials and workmanship *973 for a period of one year from the date of substantial completion. At trial the Water System put on evidence of twelve items that were not completed as called for by the contractor. The total needed to repair these items is $5,362.77.
The only item that Fluidair disputes is $1,040 needed to replace a metal tank with a fiberglass tank. Fluidair contends it was authorized to substitute a metal tank by a change order signed by Ken McManus. The Water System argues that the change order was not valid because it was not signed by all the people who are required to sign it. We disagree. The contract states, "The engineer, also, may at any time, by issuing a field order make changes in the details of the work." It also defines field order as, "A written order effecting a change in the WORK not involving an adjustment in the CONTRACT PRICE or an extension of the CONTRACT TIME, issued by the ENGINEER to the CONTRACTOR during construction."
The engineer issued a valid field order authorizing the substitution of the metal tank for the fiberglass tank for the reason that the change would not require any adjustment in contract price or extension of contract time. It is immaterial that the order was called a "change order" rather than a "field order" change. Fluidair is not responsible for replacing the tank since the field order authorized it to use a metal tank. The trial court was clearly wrong in holding Fluidair responsible for this $1,040 item.
The Water System proved the following items of damages were caused by Fluidair's failure to properly perform the work required by the contract:

 1) Refund of a deposit on a chlorine
 cylinder $1,000.00
 2) Repair to filter controls so that
 holding tank would cycle properly 882.47
 3) Repair to chlorinator 120.00
 4) Replacement of one-half horsepower
 starter with one and one-half
 horsepower starter on motor 140.00
 5) Repair to chlorine ejector 219.00
 6) Correcting electrical problems 226.30
 7) Repair of sand and gravel washout 300.00
 8) Repairs to oxidation pond 200.00
 9) Correcting improper welding 35.00
 10) Sandblasting and repainting pipe 1,000.00
 11) Repair of lines due to valve on
 mixing tank being put on wrong 200.00
 _________
 $4,322.77

This brings the total damages proved by the Water System to $4,322.77. The Water System contends it is entitled to damages for items that will need to be corrected in the future. There was testimony at trial that Fluidair failed to pre-test concrete used in the plant and that, in constructing the oxidation pond, the dirt levees were not compacted in accordance with specifications. There was no evidence as to what damages this would cause, or as to what it would cost to have the work redone properly. We decline to award damages for these items.
The next issue is whether the Water System is entitled to liquidated damages and, if so, whether it should be allowed beyond the date of signing the Certificate of Substantial Completion. The contract states that the contractor will "fully complete the project within 210 consecutive days" after August 29, 1980. The contractor further "agrees to pay as liquidated damages, the sum of $50.00 for each consecutive calendar day thereafter." Fluidair was given a forty-two day extension of time, bringing the date for completion to May 8, 1981. Fluidair argues that the system was operational by that date, or at least by May 12, 1981. The Water System put on evidence indicating it was not operational at the time, including the log books kept by the inspector of the plant while it was being built. We find that the system was not operational on May 8, 1981, and was still not complete on June 24, 1981 when the Certificate of Substantial Completion was signed. The Water System is at least entitled to liquidated damages for that period, which is the period allowed by the trial court, forty-one days.
The Water System contends it is entitled to liquidated damages beyond June 24, 1981. It did not file an answer to *974 Fluidair's appeal. An appellee is required to file an answer to an appeal when he wishes to have the judgment modified, revised or reversed in part, or demands damages against the appellant. LSA-C.C.P. art. 2133. Since the trial court awarded liquidated damages for the period of May 8 through June 24, 1981 only, we will not allow the Water System to seek a modification of that judgment.
The Water System also seeks attorney's fees. For the reasons noted above the Water System may not seek a modification in the judgment concerning attorney's fees since it did not appeal or answer Fluidair's appeal as to this item.
We find that the FHA holds $7,466.33 of the contract price. The judgment of the trial court must be modified as it was clearly wrong in awarding the water system the entire $7,466.33. Fluidair owes $4,322.77 to the Water System in proven damages and owes $2,050 in liquidated damages, bringing the total to $6,372.77. Of the retainage held by the FHA, the Water System is entitled to $6,372.77 and Fluidair is entitled to the remaining $1,093.56. Costs of this appeal are assessed to both parties on the basis of one-seventh to the Water System and six-sevenths to Fluidair.
AFFIRMED, AS MODIFIED.