563 So.2d 360 (1990)
STATE of Louisiana, in the Interest of HLD, a Minor[1], Plaintiff-Appellee,
v.
CDM, Defendant-Appellant.
No. 89-1271.
Court of Appeal of Louisiana, Third Circuit.
May 23, 1990.
*361 Landry, Rogers & Landry, James D. Landry, Crowley, for appellant (mother).
Bertrand & Soileau, Carol Hunter, Rayne, and Karen L. Longon, Lafayette, for appellee-State.
*362 Before DOMENGEAUX, C.J., and FORET and STOKER, JJ.
STOKER, Judge.

ISSUES
This appeal presents two major issues: (1) whether the State carried its burden of proof by satisfying the requirements of LSA-R.S. 13:1601B for terminating parental rights of appellant, CDM and (2) whether the State or the agency of the State involved, Department of Social Services, may be cast for the attorney's fees of the attorneys appointed by the court to represent the child and the mother, CDM. We affirm the trial court's termination judgment and make different dispositions of the attorney fee question from that of the trial court.

FACTS
The record reflects that HLD was born to CDM on August 3, 1982. HLD's certificate of live birth did not identify her natural father nor is his identity or intent known or at issue in this appeal. CDM granted care of HLD to her mother, DD. On February 5, 1985 an oral order of instanter removal was issued by the Rayne City Court removing HLD and other children from the home of DD based upon allegations of sexual abuse by DD's live-in boyfriend, EL. HLD was continued in State custody after a 72-hour hearing on February 8, 1985. HLD was adjudicated a Child in Need of Care and continued in State custody after review hearings on March 27, 1985, June 26, 1985 and November 20, 1985.
HLD was returned to the home of DD for a trial placement on March 26, 1986. At that time CDM was also residing in the home. Shortly thereafter the sexual abuser, EL, was discovered residing in the home contrary to the court's order, so HLD was again removed, and after a review hearing on October 29, 1986, returned to State custody. She has remained in State custody since that time.
In February, 1987 the State indicated that it would work with CDM to attempt reunification with HLD. In March, 1987 HLD stated that her mother's boyfriend, AM, had sexually abused her. The State validated the abuse and determined that it had occurred in March, 1986 after HLD had returned to DD's home on a trial basis. At a team conference on May 13, 1987, CDM denied the abuse and announced her intention to marry AM. She subsequently married him on May 23, 1987. AM has a prior conviction record for indecent behavior with a juvenile in January, 1975. The juvenile was a three-year-old girl.
CDM and AM continued to deny the sexual abuse. In November 1987 the State recommended termination of parental rights, but nevertheless continued to work with CDM. Monitored visits between HLD and her mother were scheduled.
In the meantime, the record reflects that HLD began to engage in sexual acting-out and self-destructive behavior. The State placed her in private psychological counseling with Dr. M. Maureen Brennan. In a report dated July 14, 1988 Dr. Brennan related that HLD was fearful of returning to CDM's home, specifically stating, "But they might do the same thing to me again." Dr. Brennan concluded:
"... I trust that with the perpetrator still in the home, and without treatment, that there are no plans to return this child to such a situation. In the off chance that there is some consideration of this move, I must strongly protest any placement of this child back in that home or any unsupervised visitation will be extremely damaging to [HLD] and place her at considerable risk. [HLD] has clearly stated that she does not even wish to visit with `that man', even within a supervised setting at the agency office. I can foresee no circumstances under which I could recommend placement of [HLD] in her mother's home at this time. Again, this would be traumatic and dangerous for [HLD], and I am quite certain, undo much if not all of the progress that has finally been obtained within the past few months."
*363 CDM and AM were evaluated by Dr. John R. Morella, a clinical psychologist, in October and November, 1988. Both were found to be in the borderline mentally defective range of intellectual functioning. Both tried to manipulate the testing. Dr. Morella found AM to have a significant personality disorder, anti-social, of such a nature as to make it unadvisable that HLD be returned to the home of CDM and AM. Dr. Morella found that CDM was so persuaded by AM and has so many qualities of dependency upon him that she could not protect HLD from AM. In sum, Dr. Morella recommended that HLD not be returned to the AM home.
The State filed a petition for termination of parental rights on or about March 17, 1989. A termination hearing was held on June 14, 1989 during which CDM still continued to deny the sexual abuse against HLD and refused to believe AM had the opportunity or the intent to sexually abuse HLD at any time in the past. A judgment terminating CDM's parental rights as to HLD was signed June 22, 1989. CDM suspensively appealed from that judgment. The State answered the appeal asking that the award of attorney's fees to counsel for mother and child be reversed. HLD is currently living in foster homes until this appeal and final adoption are finalized.

LAW
LSA-R.S. 13:1601 provides several subsections containing requirements for the termination of parental rights. The evidence need only satisfy the requirements set forth under any given subsection. State in the Interest of Townzen, 527 So.2d 579 (La.App. 3d Cir.1988). LSA-R.S. 13:1603 states that the elements of Subsection B must be proven by clear and convincing evidence. Additionally, it must be proven "that the best interests of the child dictates termination of parental rights." LSA-R.S. 13:1602(D). State, In The Interest of a Minor Male Child, 529 So.2d 34 (La.App. 1st Cir.1988).
The State proceeded pursuant to LSA-R.S. 13:1601(B) which provides as follows:

§ 1601. Petitioning for the termination of parental rights
"The court on its own motion may order that the district attorney petition, or the district attorney in his discretion may petition, for the termination of parental rights of the parent or parents of an abused, neglected, or other child within a juvenile court's jurisdiction, when the grounds set forth in the petition meet all the conditions of Subsection A, B, C, D, E, or F of this Section. The district attorney may appoint any attorney representing the Department of Social Services as a special assistant district attorney for the purpose of prosecuting any such case, regardless of the domicile of said special assistant.
* * * * * *
"(1) One year has passed since the rendition of an abuse or neglect judgment or child in need of care judgment, as defined in R.S. 13:1600(7), pursuant to the Code of Juvenile Procedure, and in the opinion of the court the parent is unfit to rear the child.
"(2) The parent or parents have shown no significant substantial indication of reformation and are unlikely to reform."
A review of each element of LSA-R.S. 13:1601B convinces us that the trial court did not clearly err in finding that the State had met and discharged its burden of proof.

ONE YEAR HAS PASSED SINCE THE RENDITION OF AN ABUSED OR NEGLECT JUDGMENT OR CHILD IN NEED OF CARE JUDGMENT, AS DEFINED IN LSA-R.S. 13:1607, PURSUANT TO THE CODE OF JUVENILE PROCEDURE
The juvenile record was introduced in its entirety without objection. Further, a stipulation was introduced "that the child, [HLD], has been adjudicated to be in need of care since March of 1985, over one year, and has remained in the legal custody of the State since that time...." (Record, p. 168) It is thus clear from the evidence that HLD was adjudicated a child in need of care and that more than one year has passed since that judgment.

*364 UNFITNESS OF THE PARENT
Unfitness is defined in Section 1600(6) as follows:

"§ 1600. Definitions
"(6) `Unfit' refers to a parent:
(a) Who has abused a child by inflicting physical or mental injury which causes severe deterioration to the child, or who has sexually abused, exploited, or overworked a child to such an extent that his or her health, moral, or emotional well-being is endangered; or
(b) Who has consistently refused to provide reasonably necessary food, clothing, appropriate shelter, or treatment either by medical care or other health services in accordance with the tenets of a well recognized religious method of healing with a reasonable proven record of success. Financial inability alone shall not constitute grounds for termination of parental rights; or
(c) Whose medical or emotional illness, mental deficiency, behavior or conduct disorder, severe physical disability, or chemical dependency makes the parent unable or unwilling to provide an adequate permanent home for the child at the present time or in the reasonably near future based upon expert opinion or based upon an established pattern of behavior."
Appellant argues that she is not unfit because she did not perpetrate the abuse on HLD.
There is substantial evidence in the record that appellant's emotional illness or mental deficiency, or both and her behavior or conduct disorder, as described by Dr. Morella in his letter of November 4, 1988, made her unwilling or unable to provide a safe, adequate and permanent home for HLD at the present time or in the reasonably near future.
Dr. Morella, qualified as an expert in the field of psychology, clearly established that in his opinion HLD was a sexually abused child, abused by her own mother's boyfriend, later husband, AM, that appellant had knowledge of the sexual abuse of HLD by AM and married him anyway. Further, Dr. Morella established that HLD, a sexual victim of AM, did not feel psychologically or physically safe in the AM home and that appellant is not capable, at this time or in the reasonably near future, of protecting HLD from continuing abuse by AM or any other male for that matter.
Dr. Brennan, qualified as an expert by stipulation, opined that termination of parental rights would definitely be in the best interest of HLD. Dr. Brennan unequivocally stated that HLD desperately needs a permanent home and a specially structured environment, that appellant is completely incapable or unwilling of providing that structured, permanent environment, that HLD would be at great risk, physically and psychologically, if she were returned to the AM home, and that Dr. Brennan could not foresee any circumstances under which HLD should be returned to the AM home in the near future. Of particular importance to this court is the established fact that appellant and AM do not even admit any sexual abuse against HLD occurred, much less display any motivation towards true recovery and rehabilitation. In sum, Drs. Morella and Brennan clearly establish that appellant suffers from a behavioral conduct disorder that renders her unable to provide an adequate permanent home for HLD now or in the reasonably near future.
Also, LSA-R.S. 13:1600(6)(a) has been held to include passive conduct that results in harm to the child. State in the Interest of C.V. v. T.V., 499 So.2d 159 (La.App. 2d Cir.), writ denied, 500 So.2d 411 (La.1986). In the instant case, clearly appellant allowed other people to abuse HLD. The State validated sexual abuse against HLD by AM, and the expert testimony supports and agrees with that validation. Nevertheless, because of appellant's dependence on others, she is unable to protect HLD from further abuse. Thus, it is our holding that the State met its burden of proving that appellant is unfit by her passive conduct which allowed sexual abuse against HLD to an extent that her health, moral and emotional well-being is endangered.
We find that the State has proved by clear and convincing evidence that appellant is unfit.

*365 THE PARENT OR PARENTS HAVE SHOWN NO SIGNIFICANT SUBSTANTIAL INDICATION OF REFORMATION AND ARE UNLIKELY TO REFORM
As noted in the preceding paragraphs, both Drs. Morella and Brennan clearly establish that appellant, suffering in the borderline mentally defective range of intellectual functioning, was dependent in so many respects upon AM that she could not protect HLD from AM, physically or psychologically, and further that appellant had very poor prospects for improvement. Dr. Morella specifically stated that between his first evaluation of appellant in 1987 and his evaluation of November 1, 1988, she had in fact deteriorated, instead of improving; thus making no significant substantial indication of reformation.
Likewise, Dr. Brennan foresees no probability of real reform inasmuch as appellant will not even admit sexual abuse of HLD. Karen Montgomery, HLD's case manager, felt appellant did not improve her situation nor did she stablize herself in any way. The record is clear that while appellant may have improved her physical living conditions, her psychological, emotional and mental state has not changed from the time of the original removal in 1985 until the time of trial. Appellant's own testimony illustrates her repeated denial of any sexual abuse of HLD and her continued insistence that AM could not and would not have harmed HLD in any waya clear indication, according to expert testimony, that appellant has not reformed and indeed is not likely to reform or change in the future.

BEST INTEREST OF THE CHILD DICTATES TERMINATION OF PARENTAL RIGHTS
The experts and the social workers all felt that termination was in the best interests of HLD and that it was crucial to HLD's development that she should not be returned to appellant's home. The mother's past performance, continued denial and poor prognosis for future performance leave no doubt that she cannot properly care for HLD. The State presented overwhelming evidence to prove that each and every element of LSA-R.S. 13:1601(B) and the evidence unequivocally established that termination is in the best interest of the child. The trial court properly terminated the parental rights of CDM.

ATTORNEY'S FEES
The trial court awarded attorney's fees to be paid by "the State of Louisiana." The sum of $700 was awarded to the attorney appointed to represent the parent, CDM, and $700 was awarded to the attorney appointed to represent the interest of the child. The appointment of these attorneys was made in response to the petition filed by the State through an order attached to the petition. The trial court signed the order on March 17, 1989. The parent and the child filed appeals through their curators ad hoc, and in the briefs filed with this court they ask for additional attorney's fees for their services on appeal. The State of Louisiana "through the Department of Social Services" answered the appeal and asked for a reversal of the attorney fee awards against "the Department of Social Services." As we will further discuss, the judgment does not charge the Department of Social Services (DSS) with payment of the attorney's fees.[2] The pertinent portions of the judgment read as follows:
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Carol Hunter, is hereby discharged as attorney at law in this matter and that she be awarded attorney's fees in the amount of seven hundred dollars ($700.00), to be paid by the State of Louisiana.

*366 "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that James Landry, is hereby discharged as attorney at law in this matter and he be awarded attorney's fees in the amount of seven hundred dollars ($700.00) to be paid by the State of Louisiana."
We will consider whether or not we can deem that the State of Louisiana in this matter is acting through or on behalf of DSS. Insofar as the pleadings go, DSS is not a party to the suit. However, DSS appears from the record to have taken over from the district attorney. In fact, under LSA-R.S. 13:1601 a district attorney is the sole agent who may bring an action for termination of parental rights. Because of the apparent hiatus just described, and other legal problems, we find it necessary to discuss the attorney fee question in some detail.

AUTHORITY FOR PETITIONING FOR TERMINATION
LSA-R.S. 13:1601 provides in part:

"§ 1601. Petitioning for the termination of parental rights
"The court on its own motion may order that the district attorney petition, or the district attorney in his discretion may petition, for the termination of parental rights of the parent or parents of an abused, neglected, or other child within a juvenile court's jurisdiction, when the grounds set forth in the petition meet all the conditions of Subsections A, B, C, D, E, or F, of this Section. The district attorney may appoint any attorney representing the Department of Social Services as a special assistant district attorney for the purpose of prosecuting any such case, regardless of the domicile of said special assistant."
Although this statute does not appear to contemplate that DSS be authorized to petition for termination of parental rights, the cases in the jurisprudence indicate that the Department of Health and Human Resources (DHHR) has appeared as a party by one means or another in various proceedings affecting the protection of children trenching upon parental rights. For example, in State In Interest of K.V., 524 So.2d 5 (La.App. 1st Cir.1988), the District Attorney for Terrebonne Parish filed a petition seeking an adjudication of "in need of care" on behalf of the State of Louisiana, Division of Evaluation Services (DES), which was a sub-entity of DHHR. Under the K.V. case and others (for which Acts 1987, No. 627 was not applicable), attorney's fees for parents could be assessed to DHHR. Also, in State In Interest of A Minor, 446 So.2d 1385 (La.App. 3d Cir. 1984), an action for termination of parental rights under LSA-R.S. 1601(D), we stated that the "State" petitioned, but the opinion clearly indicates that DHHR was a party and appealed that portion of the trial court judgment which cast DHHR with attorney's fees for the attorney appointed to represent the minor. We conclude that DSS can appear as a party seeking termination of parental rights under LSA-R.S. 13:1601, et seq. This is particularly so if the petition is brought by a district attorney on behalf of the State through DSS.
The petition in the case before us was brought as follows:
"The petition of the State of Louisiana, through the undersigned Assistant District Attorney, respectfully representing the following facts pursuant to LSA-13:1600-1605, et seq."
Thus the petition does not show DSS to be a party to the proceeding. Nevertheless, the record reflects that Karen R. Longon acted for the State in all proceedings and that she was employed by DSS. She wrote letters on DSS letterhead stationery, the title page of the transcript of testimony lists her as representing the Louisiana Department of Social Services, she filed an answer to the appeal to object to the assessment of attorney's fees which was styled "State of Louisiana, through the Department of Social Services" and she filed briefs in this court. The briefs refer only to the State.
We think it is clear that DSS, either as direct petitioner or through representation by a district attorney, is a proper party to petition in a proceeding under LSA-R.S. 13:1601, et seq. That section specifically provides that the district attorney may appoint as a special district attorney for the *367 purposes of prosecuting the case any attorney representing the Department. However, the record in this case does not disclose that Karen R. Longon was ever appointed as a special assistant district attorney or that she was ever formally substituted as attorney in place of the assistant district attorney who filed the original petition. Nevertheless, she assumed that role.
We conclude that DSS was the real party in the case before us and Karen R. Longon was, and is, authorized to represent DSS. The discussion thus far may seem to be over technical. However, in the context of such litigation the term "State of Louisiana" is amorphous, and in our opinion the State cannot practically appear except through a state agency. The term "State of Louisiana" poses no difficulty in criminal matters, but criminal matters are never handled by any attorney except district attorneys, the Attorney General and city prosecutors.

LIABILITY OF DSS FOR ATTORNEY'S FEES
Prior to Acts 1987, No. 627 amending Article 95 of the Code of Juvenile Procedure, DHHR could be required to pay the attorney's fees fixed by the court in favor of the attorney appointed to represent the parents in matters such as the case before us and similar matters. Such fees could not be assessed against DHHR in favor of the attorney appointed to represent the child. An award of attorney's fees for the child's attorney could (and still can) be made under the provisions of Article 95 of the Code of Juvenile Procedure. C.J.P. art. 95(C) and (D). State In Interest of Johnson, 475 So.2d 340 (La.1985); State in Interest of K.V., supra; State in Interest of Moore, 474 So.2d 478 (La.App. 4th Cir. 1985); State in Interest of a Minor Child, 461 So.2d 1278 (La.App. 1st Cir.1984) and State In Interest of A Minor, 446 So.2d 1385 (La.App. 3d Cir.1984).
Article 95 of the Code of Juvenile Procedure as amended by Acts 1987, No. 627 provides:
"Art. 95. Right to counsel
"A. A child shall be entitled to counsel in the following proceedings:
(1) A hearing to determine continued custody;
(2) An appearance to answer a petition which requests that the child be adjudicated to be a delinquent;
(3) A transfer hearing pursuant to R.S. 13:1571.1 et seq.;
(4) An adjudication hearing if the petition requests that the child be adjudicated to be a delinquent;
(5) A disposition hearing if the child has been adjudicated to be a delinquent;
(6) A hearing on a motion to modify the judgment of disposition in delinquency proceedings if the motion is filed by the district attorney or probation officer, unless the motion requests that the disposition be less restrictive;
(7) An appeal if the child has been adjudicated to be a delinquent.
B. The child shall be entitled to counsel in any other proceeding.
C. If the parents of the child are financially unable to afford counsel, the court shall appoint counsel in accordance with R.S. 15:141 et seq.
D. If the parents of the child are financially able to afford counsel but fail to employ counsel, the court may appoint counsel to represent the child at the expense of the parents in accordance with R.S. 15:148.
E. (1) If the court appoints an attorney to represent the parents of a child for any stage of child in need of care proceedings, including but not limited to continued custody hearings, adjudicated hearings, dispositional review hearings, and permanency planning hearings, or for any hearing for termination of parental rights, then the fees of the attorney shall not be charged against the Department of Human Resources.
(2) If the parents of the child are determined not to be indigent, they shall be responsible for their own attorney fees as determined by the presiding judge.
LSA-R.S. 15:141 et seq. as they once stood provided for a structure for *368 affording counsel to indigents, including a state indigent board (Section 141) and judicial district indigent defender boards (Section 144). In view of the fact that LSA-R.S. 15:141 through 143 were repealed by Acts 1981, No. 873, Article 95 of the Code of Juvenile Procedure should properly refer in subparagraph C to LSA-R.S. 15:144. In any event, the meaning of the codal article is clear to the effect that a child is entitled to counsel in a proceeding to terminate parental rights and the attorney ad hoc appointed to represent the child shall be compensated through the judicial district indigent defender boards.
The situation with reference to compensating attorneys appointed to represent indigent parents is now in doubt. Acts 1987, No. 627 added Section E to Article 95. Section E(1) refers to the appointment of attorneys to represent parents. Section E(1) in no uncertain terms provides that in certain proceedings involving children, including termination of parental rights, "the fees of the attorney shall not be charged against the Department of Health and Human Resources." This legislation negated the jurisprudential holdings cited earlier represented by State In Interest of Johnson, 475 So.2d 340 (La.1985), which held that fees for attorneys for parents were chargeable to the DHHR. This approach is entirely negative because the legislature made no provision for compensation of court-appointed attorneys for parents. As observed by the Louisiana Supreme Court in Johnson, LSA-R.S. 13:1302 (which is part of the termination of parental rights statute) provides that an attorney appointed to represent indigent parents shall be paid by the plaintiff in accordance with LSA-C.C.P. art. 5096.[3] Ordinarily, therefore, where the DHHR was the petitioner, it was responsible for the fee of attorneys appointed to represent indigents. Unfortunately, the addition of Section E to Article 95 has changed that and has created a hiatus in that there is now no statutory provision relating to or authorizing payment of attorneys appointed to represent indigent parents.
The legislature might have given consideration to providing a means or source for paying attorneys to represent indigent parents in termination proceedings. Insofar as we can determine the legislature did not do so. As we see it, the result is that indigent parents' court-appointed attorneys cannot be compensated. Apparently no thought was given to the fact that this failure might jeopardize the worthy social program in question. Of course, as observed by the Louisiana Supreme Court in Johnson, a court has inherent power to require an attorney to represent an indigent, with or without compensation, "as an obligation burdening his privileges to practice and to serve as an officer of court." As a permanent solution, ordering attorneys to serve without compensation is hardly practical, especially considering modern economic conditions.
After considering the conclusions stated above, we are of the opinion that there is no statutory authority for the trial court's judgment casting the State (or DSS) with the $700 awarded to the attorney appointed to represent CDM, the mother of the child.

LETTER AGREEMENT BY DSS TO PAY ATTORNEY'S FEES
We now turn to another issue concerning attorney's fees. The record reflects that some sidebar off-the-record conference *369 with the judge by all counsel resulted in an agreement that the attorney's fees of Mr. Landry be fixed at $700. The judgment was rendered on June 14, 1989. On June 20, 1989 the attorney for DSS wrote to the trial judge on the letterhead of DSS approving the proposed judgment and stating that the Department agreed to pay the fees of both attorneys in the amount of $700 each. (Tr. 157) We reproduce as Appendix I the letter of the DSS attorney. On June 22, 1989 the trial judge signed the formal judgment in which he fixed the fees of the attorneys at $700 each.
The same attorney for DSS who wrote the letter of June 20, 1989 agreeing on behalf of DSS to pay the fees now takes the position on appeal that DSS cannot be held liable for fees of attorneys appointed to represent children or parents. As we have demonstrated, this is true absent any agreement such as is involved here. The question is whether DSS is bound by the agreement forwarded to the trial judge. We can think of no reason why not. DSS could have stood on the provision of LSA-C.J.P. art. 95(E(1) and refused to agree, and its argument here would be good. We hold that DSS should be cast for the attorney's fees of $700 awarded to James Landry.

INCREASE IN COURT-APPOINTED ATTORNEY'S FEES
Both court-appointed attorneys ask in their briefs for increased compensation to cover their services on appeal. As they did not answer the appeal to ask for additional fees, we may not consider the requests. LSA-C.C.P. art. 2133; Welborn v. Ashy Enterprises, Inc., 504 So.2d 120 (La. App. 2d Cir.1987); Bank of Logansport v. Sewell, 467 So.2d 1217 (La.App. 2d Cir. 1985) and Fluidair Products, Inc. v. RobelineMarthaville Water System, 465 So.2d 969 (La.App. 2d Cir.1985).

RESOLUTION OF THE ATTORNEY'S FEE ISSUE
We hold that the judgment of the trial court was correct in awarding attorney's fees to the attorney appointed to represent CDM, the mother, based on the agreement of DSS to pay the fee. For consistencies' sake, we might also hold that DSS should be cast with the fee of the child's attorney. However, we will follow the law as we have outlined it above. The order appointing Carol Hunter as attorney to represent the interest of the child was specifically made pursuant to LSA-R.S. 15:148 which indicates that the trial court contemplated that she be compensated by the appropriate indigent board. We think it appropriate to follow the statutorily provided scheme and to direct the trial court to refer Ms. Hunter's entitlement to be paid to the appropriate indigent defender board. No increases in fees will be made for the reasons given above.

CONCLUSION
For the reasons given, the judgment of the trial court terminating the parental rights of CDM, mother of the child, is affirmed in all respects except the provisions for attorney's fees. The two pertinent paragraphs of the judgment providing for attorney's fees are amended to read as follows:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Carol Hunter be and she is hereby discharged as attorney in this matter, that her fee for services in this matter be fixed at $700 and that this proceeding be remanded to the trial court with directions to refer the matter of payment of such fee to the appropriate indigent defender board or to dispose of the matter by other appropriate means.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that James Landry be and he is hereby discharged as attorney at law in this matter and that he be awarded an attorney's fee in the amount of $700 for representing CDM in this proceeding, the fee to be paid by the State of Louisiana through the Department of Social Services.
AFFIRMED IN PART; RENDERED IN PART AND AMENDED IN PART.
*370 
NOTES
[1] On our own motion we have recaptioned this case and have referred throughout the opinion to various persons by initials in order to effect the confidentiality of the matter.
[2] The Department of Social Services (DSS) is the successor agency to the Department of Health and Human Resources (DHHR). LSA-R.S. 36:471 and Acts 1989, 1st Ex. Session, No. 1, Secs. 1 and 5. Therefore, the jurisprudence cited in this opinion involving the DHHR is applicable to DSS. Some statutory provisions still refer to DHHR, but DSS should be read in place of DHHR. LSA-R.S. 36:471 creates DSS as a body corporate with the power to sue and be sued.
[3] LSA-C.C.P. art. 5096 provides:

"Art. 5096. Compensation
The court shall allow the attorney at law appointed to represent a defendant a reasonable fee for his services, which shall be paid by the plaintiff, but shall be taxed as costs of court.
The attorney so appointed may require the plaintiff to furnish security for the costs which may be paid by, and the reasonable fee to be allowed, the attorney.
If the attorney so appointed is retained as counsel for the defendant, the attorney shall immediately advise the court and opposing counsel of such employment."
The statute provision quoted above applies to any plaintiff. Therefore, the jurisprudence handed down prior to Acts 1987, No. 627 does not single out or discriminate against DSS or its predecessor, DHHR.